**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KWAI FUN WONG; WU-WEI TIEN TAO ASSOCIATION, *Plaintiffs-Appellants*, | No. 10-36136 |
| | D.C. No. 3:01-cv-00718-JO |
| v. | |
| DAVID V. BEEBE, a former Immigration and Naturalization Service (nka Department of Homeland Security) Official; UNITED STATES OF AMERICA, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, Senior District Judge, Presiding

Argued and Submitted En Banc
March 20, 2013—San Francisco, California

Filed October 9, 2013

Before: Alex Kozinski, Chief Judge, and Harry Pregerson, A. Wallace Tashima, M. Margaret McKeown, William A. Fletcher, Marsha S. Berzon, Richard R. Clifton, Jay S. Bybee, Carlos T. Bea, Milan D. Smith, Jr., and Mary H. Murguia, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Chief Judge Kozinski;
Dissent by Judge Tashima;
Dissent by Judge Bea

## SUMMARY[*]

### Federal Tort Claims Act

The en banc court reversed the district court's dismissal of a negligence claim brought against the United States and remanded, holding that the six-month statute of limitations in the Federal Tort Claims Act, 28 U.S.C. § 2401(b), may be equitably tolled and that equitable tolling was available under the circumstances presented in this case.

The court held that nothing in the text, context, or purpose of § 2401(b) clearly indicated that the Federal Tort Claims Act's six-month limitations period implicated the district courts' adjudicatory authority. The court therefore held that § 2401(b) is a nonjurisdictional claim-processing rule subject to the presumption in favor of equitable tolling set forth in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990). The court overruled the contrary holding in *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009). The court held that the presumption in favor of equitable tolling was not overcome in this case.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The court held that plaintiff Kwai Fun Wong's claim, which was not filed within six months after the denial of her administrative claim by the INS, was rendered untimely because of external circumstances beyond her control. In light of these circumstances, the court concluded that equitable tolling properly applied to excuse Wong's late-filed amended complaint, and that her Federal Tort Claims Act claim against the United States therefore could proceed.

Concurring in the judgment, Chief Judge Kozinski agreed with the dissents that 28 U.S.C. § 2401(b) is jurisdictional, but stated that he could not dissent in this case because Wong had filed a reply memorandum reiterating her request for leave to file a second amended complaint after the INS denied her claim and before the six-month section 2401(b) window slammed shut.

Dissenting, Judge Tashima, joined by Judge Bea, stated he joined Judge Bea's dissenting opinion in full, but wrote separately to clarify that the Federal Tort Claims Act's legislative history dispelled any doubt that the Act's limitations provision was intended to be jurisdictional.

Dissenting, Judge Bea stated that he believed that Congress clearly expressed its intent that 28 U.S.C. § 2401(b) would limit the jurisdiction of federal courts by providing that tort claims "shall be forever barred" unless action is begun within the six-month period following denial of the administrative claim by the concerned agency, with no exceptions.

## COUNSEL

Thomas Martin Steenson (argued), Tom Steenson, Portland, Oregon; Beth Creighton, Creighton & Rose, Portland, Oregon, for Plaintiffs-Appellants.

Anne Murphy (argued), James George Bartolotto, and Barbara L. Herwig, Attorneys, United States Department of Justice, Civil Division, Washington, D.C.; R. Joseph Sher, Assistant United States Attorney, Alexandria, Virginia, for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

We agreed to hear this case en banc to clarify whether the statute of limitations in 28 U.S.C. § 2401(b) of the Federal Tort Claims Act ("FTCA") may be equitably tolled. We hold that § 2401(b) is not "jurisdictional," and that equitable tolling is available under the circumstances presented in this case.

## I.  BACKGROUND

### A.  Statutory Background

The FTCA contains three timing rules that govern when a plaintiff may file a claim against the United States in the district court: First, 28 U.S.C. § 2675(a) establishes an administrative exhaustion requirement, which states that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the

claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." Section 2675 further provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.*

Second, one statute of limitations in § 2401(b) sets a two-year deadline within which a claimant must present his claim "to the appropriate Federal agency . . . after such claim accrues." *Id.* § 2401(b); *see United States v. Kubrick*, 444 U.S. 111, 119–21 (1979).

Finally, § 2401(b) also establishes a second limitations period—that "[a] tort claim against the United States shall be forever barred . . . unless action is begun within six months after the . . . final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

With this statutory framework in mind, we turn to the procedural history of this case, the material facts of which are not in dispute.

**B. Facts**

More than a decade ago, Kwai Fun Wong ("Wong") and Wu Wei Tien Tao Association ("the Association"), a religious organization, sued the United States and several Immigration and Naturalization Service ("INS") officials for claims arising out of Wong's detention. *See Wong v. INS (Wong I)*, 373 F.3d 952 (9th Cir. 2004); *Wong v. Beebe (Wong II)*, No. 07-35426 (9th Cir. June 4, 2010) (per curiam). The only remaining claim is one under the FTCA, alleging

negligence against the United States based on the conditions of her confinement.

Wong and the Association filed their original complaint in the district court on May 18, 2001. That same day, Wong filed her negligence claim with the INS pursuant to the FTCA's administrative exhaustion requirement, 28 U.S.C. § 2675(a). Under § 2675(a), Wong was required to wait six months—until November 19, 2001—or until the INS denied the claim, before filing her negligence claim in the district court. *See* 28 U.S.C. §§ 1346(b)(1), 2675(a).

On November 14, 2001, Wong filed a motion in the district court seeking leave to file a Second Amended Complaint adding the negligence claim "on or after November 20, 2001"—*i.e.*, after the six-month waiting period required under § 2675(a) had expired. The INS issued a written decision denying Wong's administrative claim on December 3, 2001.

At that point, Wong had until June 3, 2002, to file her negligence claim in the district court. Here is why: Pursuant to § 2675(a), Wong was prohibited from filing her claim in the district court until after she presented it to the INS and the INS "finally decided [the claim] . . . in writing and sent [it] by certified or registered mail." 28 U.S.C. § 2675(a). Alternatively, § 2675(a) gave Wong the option to treat the INS's "failure . . . to make final disposition of [her] claim within six months after it [was] filed" as the "final denial of the claim." *Id.* Wong attempted to exercise that option when she filed her motion in the district court seeking leave to file her amended complaint "on or after November 20, 2001"—six months after she filed her claim with the INS. Had her motion been granted, then, pursuant to § 2401(b),

Wong would have had six months—until May 20, 2002—to file her amended complaint with the added FTCA claim in the district court. *See id.* § 2401(b). As noted, however, the INS denied Wong's claim on December 3, 2001, thereby starting anew the clock on the six-months limitations period in § 2401(b). Thus, the relevant deadline for filing Wong's claim in the district court was June 3, 2002. *See Lehman v. United States*, 154 F.3d 1010, 1015 (9th Cir. 1998).

On April 5, 2002, more than five months after Wong filed her motion seeking leave to amend, the magistrate judge issued Findings and Recommendations ("F&R") recommending that Wong be permitted to file an amended complaint adding her FTCA claim. The district court did not issue an order adopting the F&R until June 25, 2002, three weeks after the six-month filing deadline had expired.

Wong did file an amended complaint on August 13, 2002, which included the FTCA claim. The district court, relying on *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009), held that § 2401(b) was "jurisdictional," and that equitable tolling was therefore not available to excuse Wong's untimely filing of her claim. The district court dismissed Wong's FTCA claim for lack of jurisdiction. This appeal followed.

## II. DISCUSSION

### A. Applicability of Equitable Tolling to FTCA Claims

#### 1. General Background

*Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), sets forth the "general rule . . . govern[ing] the

applicability of equitable tolling in suits against the Government." *Id.* at 95. That case considered whether the "rule of equitable tolling" applied to an untimely Title VII claim brought against the government. *Id.* at 94–95. Noting that "[t]ime requirements in lawsuits between private litigants are customarily subject to equitable tolling," *Irwin* held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96 (internal quotation marks omitted).

*Irwin*'s "general rule" is not without exception. Some statutes of limitation are "more absolute," and do not permit "court[s] to consider whether certain equitable considerations warrant extending a limitations period." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008). "As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional.'" *Id.* at 134 (citing *Bowles v. Russell*, 551 U.S. 205, 210 (2007)).

The "jurisdiction" terminology used in the government-defendant equitable tolling context can, however, be misleading. In a series of recent cases, the Supreme Court has "pressed a stricter distinction between *truly* jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004) (emphasis added)). This distinction is critical for present purposes, because, while courts "[have] no authority to create equitable exceptions to jurisdictional requirements," *Bowles*, 551 U.S. at 214, nonjurisdictional claim-processing requirements remain "subject to [*Irwin*'s] rebuttable presumption in *favor*

of equitable tolling." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (internal quotation marks omitted).

Applying these principles to the particular statute of limitations here, our case law has come to contradictory results. *Alvarez-Machain v. United States (Alvarez-Machain I)*, 107 F.3d 696, 701 (9th Cir. 1996), held that "[e]quitable tolling is available for FTCA claims in the appropriate circumstances." Twelve years later, *Marley* held precisely the opposite, stating "that the statute of limitations in 28 U.S.C. § 2401(b) is jurisdictional and, consequently, equitable doctrines that otherwise could excuse a claimant's untimely filing do not apply."[1] 567 F.3d at 1032; *see also Adams v. United States*, 658 F.3d 928, 933 (9th Cir. 2011) (applying *Marley*).

We agreed to hear this case to resolve the conflict between *Alvarez-Machain I* and *Marley*. *See Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc). Doing so, we join with several other circuits in concluding that § 2401(b) is subject to equitable tolling. *See Arteaga v. United States*, 711 F.3d 828, 832–33 (7th Cir. 2013); *Santos ex rel. Beato v. United States*, 559 F.3d 189,

---

[1] *Marley* dismissed *Alvarez-Machain I* as having "no precedential value" because the panel opinion in that case was vacated and the case was taken en banc. *See Marley*, 567 F.3d at 1037–38 (citing *Alvarez-Machain v. United States (Alvarez-Machain III)*, 284 F.3d 1039 (9th Cir. 2002)). But the opinion that was vacated by *Alvarez-Machain III* was not *Alvarez-Machain I*. Rather, it was a different opinion in the same case: *Alvarez-Machain v. United States (Alvarez Machain II)*, 266 F.3d 1045 (9th Cir. 2001). Thus, *Alvarez-Machain I* was still good law when *Marley* was decided. The result was an intracircuit conflict, which we can resolve only through en banc proceedings. *See Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc).

194–98 (3d Cir. 2009); *Perez v. United States*, 167 F.3d 913, 916–17 (5th Cir. 1999).

### 2. Jurisdictional vs. Nonjurisdictional Claim-Processing Rules

As a threshold matter, we must decide whether § 2401(b) is a "jurisdictional" rule, to which equitable doctrines cannot apply, or a nonjurisdictional "claim-processing rule" subject to *Irwin*'s presumption in favor of equitable tolling. Both *Alvarez-Machain I* and *Marley* were decided without the benefit of the Supreme Court's most recent decisions clarifying the difference between these two categories. Accordingly, before turning to § 2401(b) itself, we discuss the Court's efforts in recent years to "bring some discipline" to the "jurisdictional" label. *See Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202–03 (2011); *see also Gonzalez*, 132 S. Ct. at 648.

The consequences of labeling a particular statutory requirement "jurisdictional" are "drastic." *Gonzalez*, 132 S. Ct. at 648. A court's "[s]ubject-matter jurisdiction can never be waived or forfeited," "objections [to the court's jurisdiction] may be resurrected at any point in the litigation," and courts are obligated to consider *sua sponte* requirements that "go[] to subject-matter jurisdiction." *Id.*; *see also Henderson*, 131 S. Ct. at 1202; *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009).

The Court has clarified in recent years that the term "'[j]urisdiction[al]' refers to a court's adjudicatory authority . . . [and] properly applies *only* to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating that authority."

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) (emphasis added) (internal quotation marks and citation omitted). Under this narrow interpretation, the term "jurisdictional" "refers [only] to a tribunal's power to hear a case." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009) (internal quotation marks omitted). So-called "claim-processing rules," by contrast, "are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 131 S. Ct. at 1203.

"To ward off profligate use of the term 'jurisdiction,' [the Court has] adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)). Specifically, courts must now ask "whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement . . . 'courts should treat the restriction as nonjurisdictional in character.'" *Id.* (quoting *Arbaugh*, 546 U.S. at 515–16). Congress need not "incant magic words in order to speak clearly." *Id.* Rather, courts are to review a statute's language, "context, and relevant historical treatment" to determine whether Congress clearly intended a statutory restriction to be jurisdictional. *Reed Elsevier, Inc.*, 559 U.S. at 166.

Applying this bright-line rule in a spate of recent cases, the Court has held nonjurisdictional various statutory limitations on the substantive coverage of statutes or the procedures for enforcing them. *See, e.g.*, *Union Pac. R.R.*, 558 U.S. at 81–82 (holding not jurisdictional a Railway Labor Act procedural rule requiring proof of a prearbitration

settlement conference); *Reed Elsevier*, 559 U.S. at 164–66 (holding not jurisdictional the Copyright Act registration requirement); *Gonzalez*, 132 S. Ct. at 648–52 (holding not jurisdictional certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requiring issuance of a certificate of appealability indicating which specific issues sufficiently implicate the denial of a constitutional right); *but see Bowles*, 551 U.S. at 209–10 (holding jurisdictional a time limit for filing a notice of appeal in a civil case under 28 U.S.C. § 2107(c)).

As the issue here pertains to a statute of limitations, the Court's recent decisions applying the "clear statement" rule to statutory time limits are particularly instructive. *Henderson* held that "a veteran's failure to file a notice of appeal within the 120-day period" required under 38 U.S.C. § 7266(a) "should [not] be regarded as having 'jurisdictional' consequences." 131 S. Ct. at 1200. Canvassing the Court's recent case law discussing jurisdictional versus nonjurisdictional rules, *Henderson* explained that "[f]iling deadlines . . . are *quintessential* claim-processing rules." *Id.* at 1203 (emphasis added). "[E]ven if important and mandatory," such rules, "should not be given the jurisdictional brand." *Id.*

Turning to the text of § 7266, *Henderson* emphasized that the relevant provision "'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court].'" *Id.* at 1204 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (alteration in original)). Although "§ 7266 is cast in mandatory language"—providing that a claimant "*shall* file a notice of appeal . . . within 120 days"—*Henderson* "rejected the notion that 'all mandatory prescriptions, *however emphatic*, are . . . properly typed

jurisdictional.'" *Id.* at 1204–05 (quoting *Union Pac. R.R.*, 558 U.S. at 81) (emphasis added). Indeed, as *Henderson* noted, Congress placed § 7266 "in a subchapter entitled 'Procedure,'" and not in the "Organization and Jurisdiction" subchapter of the statute, which "suggests Congress regarded the 120-day limit as a claim-processing rule." *Id. Henderson* therefore found no clear statement indicating that § 7266 was "jurisdictional." *Id.*; *see also Holland*, 130 S. Ct. at 2560 (holding not jurisdictional AEDPA's statute of limitations in 28 U.S.C. § 2244(d)).

More recently, *Auburn Regional Medical Center* considered whether the Medicare Act's 180-day statutory deadline for filing an administrative appeal challenging Medicare reimbursements is jurisdictional. 133 S. Ct. at 821. The Court held that it is not. "Key to our decision," the Court explained, is that "filing deadlines ordinarily are not jurisdictional; indeed, we have described them as 'quintessential claim-processing rules.'" *Id.* at 825 (quoting *Henderson*, 131 S. Ct. at 1203).

*Auburn Regional Medical Center* went on to reject the notion that the 180-day limit was "jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Id.* at 825. Nor was it significant in *Auburn Regional Medical Center* that Congress "expressly made . . . *other* time limits in the Medicare Act" nonjurisdictional. *Id.* (emphasis added). Structural considerations such as these did not provide a "clear statement" that Congress intended the 180-day limit to be jurisdictional. The limitations provision was therefore "most sensibly characterized as a nonjurisdictional prescription." *Id.* at 826.

Finally, we applied a similar analysis in a recent en banc case addressing whether the exhaustion-of-remedies requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(*l*), is jurisdictional. *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (2011) (en banc). Based on the Supreme Court's recent line of cases "clarifying the difference between provisions limiting our subject matter jurisdiction, which cannot be waived . . . , and 'claims processing provisions,'" we concluded that § 1415(*l*) is not jurisdictional for three reasons. *Id.* at 867–69 (citing cases).

First, "we observe[d] that nothing in § 1415 mentions the jurisdiction of the federal courts." *Id.* at 869. "Second, nothing in the relevant jurisdictional statutes requires exhaustion under the IDEA." *Id.* at 870. "Without clearer instruction from Congress," we declined to "infer" a jurisdictional exhaustion-of-remedies requirement. *Id.* "Finally, we [could] find no reason why § 1415(*l*) should be read to make exhaustion a prerequisite to the exercise of federal subject matter jurisdiction." *Id.* To the contrary, we suggested that there were "many good reasons why" § 1415(*l*) should not qualify as jurisdictional. Most notably, determining whether a plaintiff had exhausted her remedies is an "inexact science," subject to various "fact-specific" questions such as whether exhaustion would be futile. *Id.* Thus, we summarized, § 1415(*l*) is not jurisdictional, as it "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *Id.* at 870–71 (quoting *Reed Elsevier*, 559 U.S. at 166); *see also Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) (holding that an employee's status as a plan "participant" is an element of his ERISA claim, not a jurisdictional limitation).

### 3.  § 2401(b) Is Not Jurisdictional

*Marley* stated that "[r]esolution of the present case . . . [first] depends on how to categorize the six-month filing deadline of § 2401(b)"—as a "jurisdictional" requirement or as a nonjurisdictional "claim-processing rule."  567 F.3d at 1035.  That is true, but only in the asymmetrical sense that if the deadline is jurisdictional, it cannot be tolled; as will appear, even if it is not jurisdictional, tolling may still be precluded by a sufficiently clear congressional expression of that restriction.  We hold that § 2401(b) falls squarely in the claim-processing category, and so overrule *Marley*'s contrary conclusion.

Several factors underlie our conclusion that § 2401(b) is nonjurisdictional.

a.  *Language*

First, by its terms, § 2401(b) provides only that "[a] tort claim against the United States shall be forever barred unless . . . action is begun within six months" of mailing of notice of the final agency denial.  28 U.S.C. § 2401(b).  That statement "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [federal courts]."  *Henderson*, 131 S. Ct. at 1204; *see also Payne*, 653 F.3d at 869–70.  Rather, § 2401(b) merely states what is ordinarily true of statutory filing deadlines: once the limitations period ends, whether extended by the application of tolling principles or not, a plaintiff is "forever barred" from presenting his claim to the relevant adjudicatory body.  *See Kubrick*, 444 U.S. at 117.

Notably, although the exact language differs, § 2401(b) is the same in its lack of a reference to jurisdiction as the general, non-tort statute of limitations contained in § 2401(a), which establishes a six-year filing deadline for "every civil action commenced against the United States." 28 U.S.C. § 2401(a). And *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997), held subsection (a) nonjurisdictional, emphasizing that it "does not speak of jurisdiction, but erects only a procedural bar."[2]

Contrary to the government's assertion, § 2401(b) does not contain such unusually emphatic language that we may infer congressional intent to limit the adjudicatory authority of the federal courts from that language. We have held on prior occasions that statutes of limitations containing the phrase "forever barred" are subject to equitable tolling. For example, the 1955 Clayton Act Amendments provided that any action to enforce a right under §§ 15, 15a, and 15c of the Act "shall be *forever barred* unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b (emphasis added); *see also* Pub. L. No. 137, 69 Stat. 283 (1955). *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394, 396–407 (9th Cir. 1980), determined that § 15b could be equitably tolled. *See also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060–61 (9th Cir. 2012) (discussing tolling under § 15b); *cf. Rotella v. Wood*, 528 U.S. 549, 561 (2000) (indicating that equitable tolling may be available for

---

[2] *Aloe Vera of America, Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009), called into question *Ceder Sinai*'s continued vitality following the Supreme Court's decision in *John R. Sand & Gravel Co.*, 552 U.S. 130 (2008). That statement was made without the benefit of the Supreme Court's most recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules.

civil claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which applies the same four-year statute of limitations in 15 U.S.C. § 15b).

Likewise, the 1947 amendments to the Fair Labor Standards Act ("FLSA")—which were enacted on the heels of the FTCA—provided that every action under the FLSA "shall be *forever barred* unless commenced within two years after the cause of action accrued"  29 U.S.C. § 255(a) (emphasis added); *see also* Pub. L. No. 40, § 6(b), 61 Stat. 84, 88 (1947).  *Partlow v. Jewish Orphans' Home of Southern California*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), held that this statute of limitations could be equitably tolled.

In various other statutes enacted in the mid-twentieth century,  Congress included limitations provisions "forever barr[ing]" untimely claims.  *See, e.g.*, Automobile Dealer Franchise Act of 1956, 84 Pub. L. No. 1026, § 3, 70 Stat. 1125 (1956), *codified at* 15 U.S.C. § 1223 ("Any action brought pursuant to this Act shall be *forever barred* unless commenced within three years after the cause of action shall have accrued.") (emphasis added); National Traffic and Motor Vehicle Safety Act of 1966, Pub. L. No. 89-563, § 111(b), 80 Stat. 718, 725 (1966), *as amended by* Pub. L. No. 103-272, 108 Stat. 745 (1994) ("Any action brought pursuant to this section shall be *forever barred* unless commenced within three years after the cause of action shall have accrued.") (emphasis added); Agricultural Fair Practices Act of 1967, Pub. L. No. 90-288, § 6(a), 82 Stat. 93, 95 (1967), *codified at* 7 U.S.C. § 2305(c) (same); National Mobile Home Construction and Safety Standards Act of 1974, Pub. L. No. 93-383, § 613, 88 Stat. 633, 707 (1974),

*codified at* 42 U.S.C. § 5412(b) (same). Viewed against this backdrop, § 2401(b)'s "forever barred" language appears to be more a vestige of mid-twentieth-century congressional drafting conventions than a "clear statement" of Congress's intent to include a jurisdictional filing deadline in the FTCA.

Moreover, even if one does read the "forever barred" language in § 2401(b) as an especially emphatic limitation on FTCA claims, the Supreme Court's recent line of cases clarifying the jurisdictional/nonjurisdictional distinction make plain that not all "'mandatory prescriptions, *however emphatic*, are . . . properly typed jurisdictional.'" *Henderson*, 131 S. Ct. at 1205 (quoting *Union Pac. R.R.*, 558 U.S. at 81) (emphasis added); *see also Gonzalez*, 132 S. Ct. at 651; *Kontrick*, 540 U.S. at 454. And nothing in the text of § 2401(b) suggests that it is anything other than a straightforward filing deadline—a "quintessential claim-processing rule[]." *Henderson*, 131 S. Ct. at 1203.

Undeterred by the statute's silence as to whether the limitations period is jurisdictional (and by its placement in a section not directed at jurisdiction), Judge Bea offers a grand theory as to why § 2401(b) nonetheless clearly states a jurisdictional rule, positing that there are two types of statutes of limitations: "Plain Statutes of Limitations" and "Consequence Statutes of Limitations." Bea Dissent at 67, 71. The latter purportedly "provide mandatory consequences for failures to act according to their prescriptions," *id.* at 72, and so "require the courts to respond in a certain way to a party's failure to timely act." *Id.* Judge Bea's dissent goes on to maintain that *whenever* a limitations provision states that a claim "shall be . . . barred," or "forever barred," "Congress has spoken in jurisdictional terms" and the courts lack authority to adjudicate the claim—even if there is no mention

of jurisdiction or placement in a jurisdiction provision. *Id.* at 72–74.

Judge Bea's consequential language approach is not one that the Supreme Court has ever articulated or relied upon in determining whether a particular limitations provision is jurisdictional. Indeed, the Court criticized this approach in *Irwin*, noting that, "[a]n argument can undoubtedly be made that the . . . language is more stringent . . . , but we are not persuaded that the difference . . . is enough to manifest a different congressional intent with respect to the availability of equitable tolling." 498 U.S. at 95. While the Court has held jurisdictional certain limitations provisions containing the phrase "shall be . . . barred," it has never relied on the notion of "consequential" language to do so.[3] Instead, the Court has repeatedly eschewed a "magic words" approach to determining whether procedural requirements are jurisdictional, repeatedly taking a multifactor approach to the inquiry. *See Reed Elsevier*, 559 U.S. at 165; *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824.

Beyond that observation, we shall bypass ruling on whether Judge Bea's "consequential" language theory is a helpful construct in some circumstances. As with most

---

[3] Contrary to Judge Bea's assertion, *John R. Sand & Gravel* did not hold 28 U.S.C. § 2501 "jurisdictional" based on the "consequential" language of the statute. Rather, it held *Irwin*'s presumption of equitable tolling rebutted based on the fact that "the Court had . . . previously provided a definitive interpretation" of § 2501. 552 U.S. at 137. Nor did *Bowles* hold that the limitations provision in 28 U.S.C. § 2107 was jurisdictional solely based on its "consequential" language; like *John R. Sand & Gravel*, *Bowles* rested largely on the "century's worth of precedent and practice in American courts" ranking "time limits for filing a notice of appeal" jurisdictional. 551 U.S. at 209 n.2.

attempts to create rigid dichotomous categories, the trick is not in devising the categories but in placing various circumstances into one or the other category. Although, according to Judge Bea, a limitations provision containing "shall . . . be barred" language "'set[s] forth an inflexible rule requiring dismissal,'" Bea Dissent at 75 (quoting *Holland*, 130 S. Ct. at 2560), the words relied upon simply do not have that import.

First, as to the word "shall," the Court consistently has rejected arguments "seiz[ing] on the word 'shall'" to suggest that "'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'" *Gonzalez*, 132 S. Ct. at 651 (quoting *Henderson*, 131 S. Ct. at 1205); *see also Dolan v. United States*, 130 S. Ct. 2533, 2539 (2010) (holding that a statute's use of the word "shall" alone does not render statutory deadline jurisdictional).

Second, § 2401(b) does not in terms order *courts* to do anything, including dismiss any untimely claim. Like the exhaustion-of-remedies requirement at issue in *Payne*, "neither the word 'courts' nor the word 'jurisdiction' appears in [§ 2401(b)]." *Payne*, 653 F.3d at 869. Instead, the phrase "shall be . . . barred" is couched in the passive tense, and so could as well be directed to the plaintiff, barring him from filing the suit, as to the court, directing it to bar the filing. The "shall be . . . barred" language of the six-month filing deadline therefore does not express "an inflexible rule requiring dismissal whenever its clock has run." *Holland*, 130 S. Ct. at 2560 (internal quotation marks omitted).

Third, the word "forever" in § 2401(b) cannot supply the missing link with regard to declaration of an inflexible rule. *See* Bea Dissent at 76–77. The word "forever" is most

commonly understood as one focusing on *time*, not on scope or degree of flexibility in a static time frame. *See* Webster's New International Dictionary of the English Language 990 (2d ed. 1940) (defining "forever" to mean "[f]or a limitless time or endless ages; everlastingly; eternally," and "[a]t all times; always; incessantly"); Oxford English Dictionary (2013) (defining "forever" to mean "[a]lways, at all times; in all cases . . . [t]hroughout all time, eternally; throughout all past or all future time; perpetually"). As such, the term "forever" is most naturally read to emphasize that an untimely FTCA claim, once barred, is precluded permanently, not temporarily or until some later event occurs. A claimant therefore cannot refile the claim, nor may the time bar be lifted once it is imposed. So understood, the term "forever" does have a function in the statute, just not the one Judge Bea posits.[4] Thus, as the Fifth Circuit observed, "the use of the words 'forever barred' [in § 2401(b)] is irrelevant to equitable tolling, which properly conceived does not resuscitate stale

---

[4] It is unclear how much weight the Bea dissent accords the term "forever." For the most part, the dissent categorizes statutes that simply use "shall be barred" terminology as within its self-created "consequence" category. *See* Bea Dissent at 72–75. But Judge Bea then devotes an entire section to the word "forever," and writes that "[i]t is especially telling" that Congress included the term "forever barred" in § 2401(b), but did not do so in § 2401(a), "the very section that precedes the one here in issue." Bea Dissent at 76-79.

In fact, as we have noted, § 2401(a) does provide that an FTCA claim "shall be barred" unless it is filed within six years after the right of action accrues. *See* 28 U.S.C. § 2401(a); *see also* Act of June 25, 1948, chap. 646, 62 Stat. 971 (1948). Thus, the dissent seems to rest, at least in part, on the proposition that it is the word "forever" that transforms limitations language into the "consequential" variety. For reasons discussed in the text, the word "forever" cannot bear that weight.

claims, but rather prevents them from becoming stale in the first place."**⁵**  *Perez*, 167 F.3d at 916.

In sum, nothing in the language of § 2401(b)—including the term "shall . . . be barred," and the word "forever"—supplies a "clear statement" that Congress intended the six-month filing deadline to be jurisdictional.**⁶**

---

**⁵** Judge Bea also takes issue with *Partlow* and *Mount Hood Stages*, *supra*, which, as discussed above, held statutes of limitation containing language similar to § 2401(b) subject to equitable tolling.  Judge Bea questions the value of these precedents because they preceded the Court's more recent cases distinguishing between jurisdictional and nonjurisdictional rules.  Bea Dissent at 84–87.  As noted, however, later decisions by this Court and the Supreme Court affirm the availability of equitable tolling under 15 U.S.C. § 15b, the statute at issue in *Partlow*. *See Hexcel Corp.*, 681 F.3d at 1060–61; *Rotella*, 528 U.S. at 561.  More fundamentally, these precedents undermine the notion that Congress intended through the use of magic words in the Clayton Act Amendments and FLSA limitations provisions to establish jurisdictional bars in statutes allowing for civil suits against private parties.

**⁶** Judge Bea's reference to *Kendall v. United States*, 107 U.S. 123 (1883), as support for attributing jurisdictional meaning to the phrase "forever barred," Bea Dissent at 77–78, is misplaced.  Though *John R. Sand & Gravel* did rely on *Kendall*, it did so not because of *Kendall*'s logic, but out of deference to "[b]asic principles of *stare decisis*," *John R. Sand & Gravel*, 552 U.S. at 139, as the statute in *John R. Sand & Gravel* was the same court of claims statute that *Kendall* (and *Finn v. United States*, 123 U.S. 227 (1887), and *Soriano v. United States*, 352 U.S. 270 (1957)) had already interpreted.  *Id.* at 134–35.  Indeed, *John R. Sand & Gravel* recognized that the older cases on which it relied were out of step with *Irwin*, but justified that reliance on "Justice Brandeis['s] . . . observ[ation] that 'in most matters it is more important that the applicable rule of law be settled than that it be settled right.'"  *Id.* at 139 (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (dissenting opinion)).

b.  *Placement*

The "context" surrounding § 2401(b) likewise does not "clearly" indicate Congress's intent to "rank" this provision as jurisdictional. *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 824.

The jurisdiction-granting provision of the FTCA is located at 28 U.S.C. § 1346(b)(1) and provides that "[s]ubject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . under circumstances where the United States, if a private person, would be liable to the claimant."  Section 1346(b)(1) makes no mention of the six-month filing deadline in § 2401(b).  Furthermore, while § 1346(b)(1) does cross-reference "the provisions of chapter 171," it does *not* cross-reference § 2401(b), which is located in chapter 161, not chapter 171.  Thus, the FTCA's statute of limitations "is located in a provision separate from [the provision] granting federal courts subject-matter jurisdiction over [FTCA] claims."  *Reed Elsevier*, 559 U.S. at 164 (internal quotation marks omitted); *see also Henderson*, 131 S. Ct. at 1205.

Further, even if § 1326(b) did mention the six-month filing deadline in § 2401(b), the Court's recent guidance on this subject indicates that an otherwise nonjurisdictional rule's location within a statutory scheme does not automatically transform the rule into a jurisdictional prerequisite.  Thus, a rule "does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions."  *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 825; *see also Gonzalez*, 132 S. Ct. at 651.

Not satisfied with the plain language of § 1346(b), the government looks elsewhere for a "clear statement" of § 2401(b)'s jurisdictional import: the legislative history of the FTCA. According to the government, "[t]he FTCA's limitations provision is found outside of chapter 171 only as a happenstance of recodification." In his dissent, Judge Tashima likewise relies on the earlier version of the FTCA to conclude that "Congress provided a clear statement [that the FTCA's limitations provision was jurisdictional] when enacting the provision in 1946," and that statement remains clear today. Tashima Dissent at 59.

In the first place, and dispositively, it is improper to consider legislative history in this instance. "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Consequently, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)) (internal quotation marks omitted). The current statutory language of § 1326(b), the FTCA jurisdictional provision, cross-references other provisions of the FTCA but not the chapter containing the limitations provision, § 2401(b). There is no ambiguity whatever in this regard; chapter 171 is not, and does not include, chapter 161, period.[7]

---

[7] The fact that this statute "produce[d] an intracircuit split, several en banc dissents, and dozens of pages of analysis by the majority," Tashima Dissent at 56, does not mean that the cross reference to chapter 171 is *itself* ambiguous. While reasonable jurists may certainly debate the general

Secondly, even if we were to consider the FTCA's legislative history, we could find no "clear statement" as to jurisdiction. *See Exxon Mobil*, 545 U.S. at 568–69. Congress first enacted the FTCA in 1946 as Title IV of the Legislative Reorganization Act ("1946 Act"). *See* Pub. L. No. 79-601, tit. IV, 60 Stat. 812, 842–47 (1946). The provisions of the FTCA were codified in chapter 20 of Title 28 of the United States Code. *See* 28 U.S.C. §§ 921–46 (1946).[8] As originally codified, the FTCA's grant of jurisdiction read:

---

equitable tolling question this case presents, the cross reference to chapter 171, and not to chapter 161, is plain as day.

[8] The original limitations provision in Section 420 of the Act provided:

> Every claim against the United States cognizable under this title shall be forever barred, unless within one year after such claim accrued . . . it is presented in writing to the Federal agency out of whose activities it arises, if such claim is for a sum not exceeding $1,000; or unless within one year after such claim accrued . . . an action is begun pursuant to part 3 of this title. In the event that a claim for a sum not exceeding $1,000 is presented to a Federal agency as aforesaid, the time to institute a suit pursuant to part 3 of this title shall be extended for a period of six months from the date of mailing of notice to the claimant by such Federal agency as to the final disposition of the claim or from the date of withdrawal of the claim from such Federal agency pursuant to section 410 of this title, if it would otherwise expire before the end of such period.

60 Stat. 812, 845. As originally enacted, the FTCA did not *require* claimants to exhaust their administrative remedies. That requirement was added in 1966. *See* 28 U.S.C. § 2401(b) (1994); H.R. Rep. No. 89-1532 at 6–7 (1966); S. Rep. No. 89-1327 at 2–3 (1966).

> Subject to the provisions of this chapter, the
> United States district court for the district
> court wherein the plaintiff is resident or
> wherein the act or omission complained of
> occurred . . . shall have exclusive jurisdiction
> to hear, determine, and render judgment on
> any claim against the United States, for
> money only . . . on account of personal injury
> or death caused by the negligent or wrongful
> act or omission of any employee of the
> Government while acting within the scope of
> his office or employment, under
> circumstances where the United States, if a
> private person, would be liable to the claimant
> for such damage, loss, injury, or death in
> accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 931(a) (1946). Congress recodified and reorganized all of Title 28 in 1948, and, in the course of doing so, placed the FTCA's limitations provision in its current location in chapter 161, while placing most of the other FTCA provisions formerly located in chapter 20 in chapter 171. Pub. L. No. 80-773 ("1948 Act"), 62 Stat. 869, 970–74 (1948); *id.* 62 Stat. 869, 982–85. The jurisdiction-granting provision was relocated to chapter 85 and codified at 28 U.S.C. § 1346(b). *Id.* at 933. Because § 1346(b) was no longer located in the same chapter as the other FTCA provisions, the "subject to" phrase was changed to refer to "the provisions of chapter 173 of this title." *Id.*

As Judge Tashima points out, the reference in the 1948 version of § 1346(b) to chapter 173 was a scrivener's error, as there was no chapter 173 of Title 28. Tashima Dissent at

53. A year later, Congress corrected the error, changing the language of § 1346(b) to read: "[s]ubject to the provisions of chapter 171." *See* Pub. L. No. 81-55, 63 Stat. 62 (1949). But that correction did nothing to erase the fact that the only cross-reference in the jurisdictional provision, § 1346(b), is to a chapter, chapter 171, which *does not* contain the FTCA limitations provisions.

Nor does the directive of the 1948 Act that we are not to "infer . . . a legislative construction from the chapter in which a provision appears" override the plain terms of § 1346(b) as revised. No *inference* is required to conclude that the FTCA jurisdictional provision is no longer "subject to" the limitations section. Instead, one need only read § 1346(b) to determine that that is so; again, chapter 161 is not chapter 171, period. Thus, although the Court "does not presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed," *John R. Sand & Gravel Co.*, 552 U.S. at 136 (internal quotation marks omitted), that intent *was* clearly expressed when the cross-reference to § 1346(b) was revised to include many provisions of the FTCA but not the applicable limitations period.

Under Judge Tashima's "inference" approach to the clear statutory language, it would not have mattered what Congress wrote into the FTCA's jurisdictional grant in 1948 (and later corrected in 1949). Congress could have revised the statute to read "Subject to the provisions of chapter 171" (as it eventually did); "Subject to the provisions of chapter 171 and 161"; or "Subject to the provisions of chapter 161," and Judge Tashima's interpretation would still be the

same—"subject to any provision of the original FTCA as codified in 1946."**[9]**

We hold, instead, that § 1326(b) means what it says: that the district courts "shall have exclusive jurisdiction of civil actions on claims against the United States[] for money damages," "[s]ubject to the provisions of chapter 171." 28 U.S.C. § 1326(b). The FTCA's legislative history cannot supply a "clear statement" to the contrary. Accordingly, there is no contextual reason to think that the limitations period provisions are jurisdictional.**[10]**

---

**[9]** We note as well that the proposition that *any* requirement that the FTCA's jurisdictional grant is "subject to" is automatically a jurisdictional prerequisite is a questionable one. The fact that § 1326(b) requires plaintiffs to comply with certain requirements to file a claim against the United States does not mean that each and every one of those requirements concern "a tribunal's power to hear a case." *Union Pac. R.R.*, 558 U.S. at 81. Indeed, "subject to" originally encompassed section 411 of Title IV, which made the Federal Rules of Civil Procedure applicable in FTCA cases; under Judge Tashima's approach, compliance with the Federal Rules would have thus been a jurisdictional requirement. "Subject to" is more sensibly read to mean that litigants have to follow the prescribed procedures, not that each and every one of those procedures, if not followed, gives rise to the "drastic" consequences that follow from lack of subject matter jurisdiction. *See Gonzalez*, 132 S. Ct. at 648. We have never held otherwise. And where the Supreme Court has held a specific provision in chapter 171 jurisdictional, it has not done so because *every* rule in chapter 171 is a jurisdictional requirement. *See McNeil v. United States*, 508 U.S. 106, 111–13 (1993); *Smith v. United States*, 507 U.S. 197, 199 (1993).

**[10]** Aside from our holdings in *Brady v. United States*, 211 F.3d 499, 502–03 (9th Cir. 2000), and *Lesoeur v. United States*, 21 F.3d 965, 967 (9th Cir. 1994), which held, respectively, that the administrative exhaustion requirement in § 2675(a) and discretionary function exception in § 2680(a) are jurisdictional, we have not addressed whether any of the other provisions in chapter 171 of the FTCA set forth jurisdictional

c. *Exceptions*

In holding § 2401(b) "jurisdictional," *Marley* found it significant that Congress "explicitly included some exceptions to the deadlines in § 2401(a), but included no such exceptions in § 2401(b)." 567 F.3d at 1037. Section 2401(a) provides, in relevant part, that an "action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases." 28 U.S.C. § 2401(a). *Marley* reasoned that "[b]ecause Congress chose to extend the time limit in § 2401(a) under certain circumstances, but did not include any exceptions to the limitations period of § 2401(b), we must conclude that Congress intended the deadlines of § 2401(b) to be adhered to strictly." 567 F.3d at 1037 (emphasis omitted).

That conclusion cannot be squared with *Auburn Regional Medical Center*, which rejected the argument that a statutory time limit "should be viewed as jurisdictional because Congress could have expressly made the provision nonjurisdictional, and indeed did so for other time limits in the [statute]." 133 S. Ct. at 825. Although "Congress's use of certain language in one part of the statute and different language in another can indicate that different meanings were intended," that interpretive principle cannot, without more, provide the "clear statement" required to classify § 2401(b) as "jurisdictional." *Id.* at 825–26 (internal quotation marks omitted); *see also Santos*, 559 F.3d at 195–96.

---

requirements. In holding § 2401(b) nonjurisdictional, we express no views as to whether the other provisions located in chapter 171 are jurisdictional.

d.  *Earlier Cases*

Finally, unlike in *Bowles*, 551 U.S. at 210–13, and *John R. Sand & Gravel*, 552 U.S. at 137–39, there has not been a venerable, consistent line of cases treating the FTCA limitations period as jurisdictional counseling against switching gears now.  Although we have held that § 2401(b) is jurisdictional, *see Marley*, 567 F.3d at 1035–36 (citing *Berti v. V.A. Hosp.*, 860 F.2d 338, 340 (9th Cir.1988); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983); *Blain v. United States*, 552 F.2d 289, 291 (9th Cir. 1977) (per curiam); *Mann v. United States*, 399 F.2d 672, 673 (9th Cir. 1968)), unlike in *Bowles* and *John R. Sand & Gravel*, there is no Supreme Court precedent on the question. *See Reed Elseveir*, 559 U.S. at 173–74 (Ginsburg, J. concurring) (rejecting citation to non-Supreme Court precedent because *Bowles* and *John R. Sand & Gravel* "relied on longstanding decisions of *this* Court typing the relevant prescriptions 'jurisdictional'") (emphasis in original).  And we have also held otherwise in *Alvarez-Machain I*, 107 F.3d 696.

Further, the pre-*Alvarez-Machain I* cases cited in *Marley* preceded both *Irwin* and the Supreme Court's more recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules.  Indeed, our pre-*Alvarez-Machain I* decisions are emblematic of the "drive-by jurisdictional rulings" to which the Supreme Court has cautioned against giving "precedential effect" in its more recent cases.  *See Arbaugh*, 546 U.S. at 511.  For example, *Berti*, a three-page opinion, labels § 2401(b) "jurisdictional," but provides no

analysis as to the meaning or significance of that term.[11]  *See Berti*, 860 F.2d at 340.  Accordingly, this is certainly not the "exceptional [case] in which a 'century's worth of precedent and practice in American courts' rank [the] time limit as jurisdictional." *Auburn Reg'l Med. Ctr.*, 133 S. Ct. at 825 (quoting *Bowles*, 551 U.S. at 209 n.2).

### e.  *Purpose*

Finally, with regard to the particular role of the FTCA's six-month limitations period for filing suit we "find no reason why [§ 2401(b)] should be read . . . [as] a prerequisite to the exercise of federal subject matter jurisdiction." *Payne*, 653 F.3d at 870.

First, the consideration that the FTCA authorizes suits against the federal government does not, standing alone, supply such a reason.  In so concluding, "[w]e . . . have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *Kubrick*, 444 U.S. at 117–18; *see also Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983).  But the fact that the FTCA is predicated on a sovereign immunity waiver does not make the six-month filing deadline a jurisdictional prerequisite, not subject to equitable tolling.  Although waivers must be "strictly construed," *Irwin* explained that "[o]nce Congress has made

---

[11] *Blain*, *Mann*, and *Augustine*, cited in *Marley*, addressed the two-year administrative claim limitation period in § 2401(b), not the six-month post-exhaustion period.  *See Blain*, 552 F.2d at 291; *Mann*, 399 F.2d at 673; *Augustine*, 704 F.2d at 1077.

such a waiver, . . . making the rule of equitable tolling applicable to suits against the Government, in the same way that is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." *Irwin*, 498 U.S. at 94–95.

*John R. Sand & Gravel*, 552 U.S. 130, is not to the contrary. That case did note that "[t]he Court has often read the time limits of these [sovereign immunity waiver] statutes as more absolute," *id.* at 133–34, and "has sometimes referred to the time limits in such statutes as 'jurisdictional.'"[12] *Id.* at 133–34 (citing *Bowles*, 551 U.S. at 210). But *John R. Sand & Gravel* did not turn on any bright-line distinction between statutes of limitation that "protect a defendant's case-specific interest in timeliness," and those "limiting the scope of a governmental waiver of sovereign immunity." 552 U.S. at 133–34. Instead, *John R. Sand & Gravel* reiterated and applied *Irwin*'s presumption that equitable tolling applies to statutes of limitations in suits against the government, distinguishing *Irwin* on the grounds that "*Irwin* dealt with a different limitations statute [that] . . . , while similar to [§ 2501] in language, is unlike [§ 2501] in the key respect that the Court had not previously provided a definitive interpretation." *Id.* at 137.

Second, there is no reason to think § 2401(b) more concerned with "achiev[ing] a broader system-related goal"

---

[12] The Court's other recent cases discussing the distinction between jurisdictional and nonjurisdictional statutes, including *Auburn Regional Medical Center*, 133 S. Ct. 817, *Gonzalez*, 132 S. Ct. 641, *Henderson*, 131 S. Ct. 1197, *Holland*, 130 S. Ct. 2549, and *Bowles*, 551 U.S. 205, also involve lawsuits against governmental entities. But they were not lawsuits in federal court against the federal government, and so may not raise precisely parallel sovereign immunity concerns.

than simply with protecting the government's "case-specific interest in timeliness." *Id.* at 133. *Holland* is instructive in this regard. As noted above, *Holland* held that AEDPA's statute of limitations in 28 U.S.C. § 2244(d) is not jurisdictional, and therefore is "subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" 130 S. Ct. at 2560 (quoting *Irwin*, 498 U.S. at 95–96). Doing so, *Holland* rejected the argument "that equitable tolling undermines AEDPA's basic purposes." *Id.* at 2562. While acknowledging AEDPA's systemic goal of "eliminat[ing] delays in the federal habeas review process," *Holland* emphasized that AEDPA "[does] not seek to end every possible delay at all costs." *Id.* *Holland* therefore declined to read § 2244(d) as indicating "congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open." *Id.*

Section 2401(b) likewise does not evince congressional intent to foreclose the application of equitable principles for the sake of "broader system-related goals." As *Kubrick* explained, § 2401(b)'s "obvious purpose[] . . . is to encourage the prompt presentation of claims." 444 U.S. at 117. That is consistent "with the general purpose of statutes of limitations: 'to protect defendants against stale or unduly delayed claims.'" *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (quoting *John R. Sand & Gravel*, 552 U.S. at 133).

*McNeil v. United States*, 508 U.S. 106 (1993), does not detract from our conclusion. *McNeil* strictly construed the administrative exhaustion requirement in 28 U.S.C. § 2675(a), holding that an FTCA action filed before exhaustion had been completed could not proceed in the district court even where the litigation had not substantially

progressed.      508 U.S. at 111–13.      The exhaustion
requirement, unlike the § 2401(b) limitations period, *is* tied
by explicit statutory language to jurisdiction, and was deemed
"jurisdictional" in *Brady*, 211 F.3d 499, 502 (9th Cir. 2000).
The "straightforward statutory command" in § 2675(a),
*McNeil* explained, served "[t]he interest in orderly
administration of this body of litigation." *Id.* at 112.

Judge Bea maintains that *McNeil*'s concern about the
"orderly administration of [FTCA] litigation" with respect to
the exhaustion-of-remedies requirement in § 2675(a) compels
us also to treat § 2401(b)'s six-month filing deadline as
jurisdictional. We disagree.     Strict enforcement of an
exhaustion requirement serves to assure a particular
administrative interest—namely, the interest in assuring that
agency officials have a full opportunity to investigate and
consult internally with regard to claims for compensation due
to negligence by agency employees.  Further, that purpose
recognized by the Supreme Court in *McNeil*—reducing court
congestion by keeping claims out of court until an
administrative agency has had a chance to settle them—is not
implicated by § 2401(b)'s sixth-month post-exhaustion
limitations period. *See id.* at 111–12, 112 n.8.  Where agency
exhaustion is required, there is notice of the claim and of the
need for information collection, as well as an opportunity to
settle the claim, well before suit is filed in court.

In short, nothing in the text, context, or purpose of
§ 2401(b) clearly indicates that the FTCA's six-month
limitations period implicates the district courts' adjudicatory
authority.     We therefore hold that § 2401(b) is a
nonjurisdictional claim-processing rule subject to the
presumption in favor of equitable tolling, and so overrule
*Marley*'s contrary holding.

### 4. The *Irwin* Presumption in Favor of Equitable Tolling

Having concluded that § 2401(b) is a nonjurisdictional statute of limitations subject to *Irwin*'s presumption in favor of equitable tolling, we must next determine whether that presumption has been overcome in this case. *See Holland*, 130 S. Ct. at 2560; *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1098 (9th Cir. 2005). "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle." *Young v. United States*, 535 U.S. 43, 49–50 (2002) (internal quotation marks and citations omitted). We must therefore ask whether "there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply" to § 2401(b). *United States v. Brockamp*, 519 U.S. 347, 350 (1997). There is no such reason.

As an initial matter, we note that the *Irwin* presumption regarding the tolling of limitations periods in suits against the federal government is particularly strong in FTCA cases. Various provisions of the FTCA confirm that suits against the government are to be treated no differently than suits against private defendants.

For example, § 2674, governing the "Liability of [the] United States," states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances*." 28 U.S.C. § 2674 (emphasis added); *see Arteaga*, 711 F.3d at 833. Likewise, § 1346(b)(1) grants the district courts exclusive jurisdiction

over civil actions against the government "under circumstances where the United States, *if a private person*, would be liable." *Id.* § 1346(b)(1) (emphasis added). Thus, as a general matter, the FTCA places suits against the United States on equal footing with suits against private individuals.

The *Irwin* presumption is further strengthened by the "discovery" rule applicable to § 2401(b): A plaintiff is required to file her claim with the relevant federal agency "within two years after such claim accrues," *id.* § 2401(b). Applying the common law discovery rule—which does not appear in the statute—courts view a claim as "'accru[ing]' within the meaning of [§ 2401(b)] when the plaintiff knows both the existence and the cause of his injury." *See Kubrick*, 444 U.S. at 119–21 and n.7. As a practical matter, this common law rule "extends the statute of limitations by delaying the date on which it begins to run." *Arteaga*, 711 F.3d at 833. Application of a common law discovery rule not enunciated in the statute to aspects of § 2401(b) reinforces the notion that the FTCA's statutes of limitations admit of common law exceptions.

Without the discovery rule, the deadlines contained in § 2401(b) would closely resemble a "statute of repose": "a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation." *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003). "[L]ike a jurisdictional prerequisite," a statute of repose is not subject to equitable tolling. *Albillo-De Leon*, 410 F.3d at 1097 n.5; *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991); *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 534–36 (9th Cir. 2011). While a nonjurisdictional statute of limitations "bars plaintiff[s] from bringing an already accrued claim after a

specified period of time," a statute of repose "terminates a right of action after a specific time, even if the injury has not yet occurred." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 952 n.7 (9th Cir. 2005).[13]

Far from setting a fixed cutoff date, § 2401(b) "is in the traditional form of a statute of limitations." *Johnson v. Aljian*, 490 F.3d 778, 781 n.12 (9th Cir. 2007). As such, just as it is subject to the common law discovery rule, so the presumption favoring equitable tolling applies.

That § 2401(b) acts as a condition on the FTCA's waiver of sovereign immunity does not alter our conclusion, essentially for the same reasons discussed earlier with regard to the jurisdictional question. With or without a waiver of sovereign immunity, the key inquiry, following *Irwin*, remains whether equitable tolling "is inconsistent with the text of the relevant statute."[14] *United States v. Beggerly*,

---

[13] In *Munoz*, for example, we held that section 203 of the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105–100, 111 Stat. 2160 (1997), was a statute of repose, because it contained "fixed, statutory cutoff date[s]" requiring an alien to file an application for relief by April 1, 1990 or December 31, 1991. The statute did "'not await a specific event to start the deadline clock,'" but "'[r]ather . . . served as the endpoint of the definite time period in which Congress would permit [applicants] to file applications.'" 339 F.3d at 957 (quoting *Iacono v. Office of Pers. Mgmt.*, 974 F.2d 1326, 1328 (Fed. Cir. 1992) (emphasis omitted)).

[14] The Supreme Court has, at times, indicated that equitable considerations are less likely to apply to limitations provisions limiting the scope of a governmental waiver of sovereign immunity. *See John R. Gravel & Sand*, 552 U.S. at 133–34; *Soriano*, 352 U.S. at 275–77. Most notably, *Soriano* declined to equitably toll the statute of limitations for filing a claim in the Court of Claims, 28 U.S.C. § 2501, explaining "that

524 U.S. 38, 48 (1998); *see also John R. Sand & Gravel*, 552 U.S. at 139. For the reasons already discussed, nothing in § 2401(b) suggests that it is inconsistent with equitable tolling. To the contrary, the FTCA goes out of its way in its efforts to treat the United States the same as private tort defendants.

Neither *Brockamp*, 519 U.S. 347, nor *Beggerly*, 524 U.S. 38, two cases in which the Supreme Court held the *Irwin* presumption rebutted, indicates that the same conclusion is appropriate here. *Brockamp* held that a statute of limitations for filing tax refund claims foreclosed application of equitable tolling, citing as evidence of Congress's intent the statute's "highly detailed," "technical," and "unusually emphatic form." 519 U.S. at 350. *Brockamp* further emphasized that "tax law," the subject matter of the statute of limitations in that case, "is not normally characterized by case-specific exceptions reflecting individual equities," given

---

limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *See* 352 U.S. at 275–76.

Noting that the Court's "previous cases dealing with the effect of time limits in suits against the Government have not been entirely consistent," *Irwin* discussed the result in *Soriano*, and concluded that its holding did not apply to the thirty-day time limit in Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(c). *Irwin*, 498 U.S. at 94–95. Instead, *Irwin* explained, "this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government," namely, the rebuttable presumption in favor of tolling. *Id.* at 95–96. In announcing this "general prospective rule," *John R. Sand & Gravel*, 552 U.S. at 137, *Irwin* did not expressly overrule *Soriano*, but made clear that *Soriano* is not to be read to proscribe the application of equitable doctrines to limitations on waivers of sovereign immunity in every case.

the more than "200 million tax returns" and "more than 90 million refunds" processed each year. *Id.* at 352. *Beggerly*, in turn, determined that an "unusually generous" twelve-year statute of limitations was "incompatible" with equitable tolling, in large part because the underlying subject matter concerned "ownership of land," and equitable tolling would "throw a cloud of uncertainty over [property] rights." 524 U.S. at 48–49.

For reasons similar to those relied upon in the Supreme Court's more recent *Holland* decision, the statute of limitations here "differs significantly from the statutes at issue in [*Brockamp*] and [*Beggerly*]." *Holland*, 130 S. Ct. at 2561. *Holland* held AEDPA's one-year statute of limitations in 28 U.S.C. § 2244(d) nonjurisdictional and "subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Id.* at 2560 (quoting *Irwin*, 498 U.S. at 95–96) (emphasis omitted)). Applying that presumption, *Holland* explained that, unlike the statute of limitations at issue in *Brockamp*, § 2244(d) "does not contain language that is 'unusually emphatic,' nor does it 're-iterat[e]' its time limitation." *Id.* at 2561. Moreover, "unlike the subject matters at issue in both *Brockamp* and *Beggerly*—tax collection and land claims—AEDPA's subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home." *Id.* Accordingly, "neither AEDPA's textual characteristics nor the statute's basic purposes 'rebut' the basic presumption set forth in *Irwin*." *Id.* at 2562.

The same conclusion applies to § 2401(b). As discussed above, the FTCA's limitations provision is not cast in particularly emphatic language given its provenance; nor is it unusually generous. *See* Part II.A.3. And, unlike the limitations provision in *Brockamp*, § 2401(b) does not

"reiterate[] its limitations several times in several different ways." *Brockamp*, 519 U.S. at 351. Instead, § 2401(b) "reads like an ordinary, run-of-the-mill statute of limitations," reflecting its period of enactment. *Holland*, 130 S. Ct. at 2561.

Furthermore, like the statute of limitations at issue in *Holland*, § 2401(b) "pertains to an area of the law where equity finds a comfortable home." *Id.* As *Irwin* noted, "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" 498 U.S. at 95. And, as discussed above, the FTCA places tort suits against the United States on equal footing with tort suits against private individuals, exposing the government to liability "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. That Congress saw fit to include a time limit on such claims without any specific limitations on tolling indicates, if anything, that it intended to allow the operation of normal equitable tolling principles that would be applicable in ordinary tort suits against private individuals, not that it harbored an intention otherwise.

*Rouse v. United States Department of State*, 567 F.3d 408 (9th Cir. 2009) (analyzing the Privacy Act's two-year statute of limitations, 5 U.S.C. § 552a(g)(5)), reached a similar result to the one we reach here. In that case, a U.S. citizen sued the "U.S. Department of State under the Privacy Act for damages arising from his imprisonment in a foreign country." 567 F.3d at 412. *Rouse* held, first, that the citizen's claims were "sufficiently similar to traditional tort actions such as misrepresentation and false light to warrant the application of *Irwin*'s rebuttable presumption." *Id.* at 416. Next, *Rouse* distinguished § 552a(g)(5) from the limitations provisions at

issue in *Brockamp* and *Beggerly*, noting that § 552a(g)(5) lacked "detail[ed], . . . technical language" and did not concern an "area[] of law where the running of a defined statute of limitations is of special importance.'" *Id.* at 417 (first alteration in original) (internal quotation marks omitted). *Rouse* therefore concluded that the *Irwin* presumption had not been rebutted in that case.

Finally, for the reasons similar to those we surveyed in declining to infer § 2401(b)'s "jurisdictional" status from other FTCA provisions and subsection (a) of § 2401, *see supra* Part II.A.3, Congress's decision to include explicit exceptions in other FTCA limitations provisions does not rebut the *Irwin* presumption.[15] As *Holland* explained, the fact that a statute "is silent as to equitable tolling while containing one provision that expressly refers to a different kind of tolling" does not foreclose the application of equitable tolling. 130 S. Ct. at 2561–62; *see also Young*, 535 U.S. at 53 (rejecting the argument that an "express tolling provision, appearing in the same subsection as the [limitations] period, demonstrates a statutory intent *not* to toll the [limitations] period").

In short, the *Irwin* presumption is not overcome. Nothing in § 2401(b)'s text or context indicates that Congress intended to preclude courts from *ever* applying equitable

---

[15] For example, the revisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), Pub. L. No. 100-964, §§ 5-6, 102 Stat. 4563, 4564-65 (1988), to 28 U.S.C. § 2679(d)(5), provide that an action dismissed under the exhaustion requirement in 28 U.S.C. § 2675(a) is considered timely under 28 U.S.C. § 2401(b) if the administrative claim would have been timely had the claim been filed on the date of commencement of the civil action. *See* 28 U.S.C. § 2679(d)(5).

tolling to claims filed outside of the six-month limitations period.

## B. Wong Is Entitled to Equitable Tolling

Concluding, as we do, that equitable adjustment of the limitations period in § 2401(b) is not prohibited, does not decide under what circumstances equitable tolling may be appropriate. Whether a particular untimely claim may be excused for a particular reason varies with the reason. We decide only that under the circumstances presented here, the usual principles governing equitable tolling apply and we can find no "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." *Brockamp*, 519 U.S. at 350.

We assume for present purposes, without deciding, that Wong's FTCA claim was filed in the district court too late. In doing so, we pause to note that whether this is so depends on: (1) whether the claim could be considered filed in the district court at a point earlier than the amendment actually adding the FTCA claim was filed; and (2) whether, if so, the relevant filing date was (a) November 14, 2001, the date Wong's formal motion to file the amended complaint was filed; (b) November 20, 2001, the date as of which the motion to file the amended complaint requested that the complaint be amended; or (c) December 10, 2001, the date Wong's Reply Memorandum on the motion to amend, which reiterated the request to amend, was filed. Adopting the first of these possible dates would create its own timeliness problem—whether the court claim was filed too early—under

*McNeil*, 508 U.S. at 111–13; adopting the second might also raise a *McNeil* problem.[16]

Although there may be a defensible road through this thicket yielding the result that the FTCA claim was timely filed, at least constructively, *cf.* Fed. R. Civ. P. 15(c), reaching that result would entail one or more novel rulings concerning when FTCA claims added by amendment are considered filed. Moreover, and notably, any such ruling would in all likelihood itself rest on an equitable adjustment of the usual application of limitations periods, because some form of constructive filing date, different from the date the amended complaint was actually filed in the district court, would be required. In the end, then, there is little difference in the underlying justification between applying traditional equitable tolling principles and devising a novel equitable solution to the filing date problem in this case. We therefore proceed along the established, traditional route.

In applying equitable tolling, courts "follow[] a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" *Holland*, 130 S. Ct. at 2563 (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 248 (1944)). Thus, the equitable tolling doctrine "enables courts to meet new situations [that] demand equitable intervention, and to accord

---

[16] As noted, Wong's initial motion seeking leave to amend sought to treat the INS's inactivity regarding her claim as the agency's final decision under § 2675(a), but preceded the INS's denial of her claim on December 3, 2001. *See supra* part I.B.

all the relief necessary to correct . . . particular injustices."
*Id.* (internal quotation marks omitted) (alterations in original).

"[L]ong-settled equitable-tolling principles" instruct that
"'[g]enerally, a litigant seeking equitable tolling bears the
burden of establishing two elements: (1) that he has been
pursuing his rights diligently, and (2) that some extraordinary
circumstances stood in his way.'" *Credit Suisse*, 132 S. Ct.
at 1419 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418
(2005) (emphasis omitted); *see also Ramirez v. Yates*,
571 F.3d 993, 997 (9th Cir. 2009). As to the first element,
"[t]he standard for reasonable diligence does not require an
overzealous or extreme pursuit of any and every avenue of
relief. It requires the effort that a reasonable person might be
expected to deliver under his or her particular circumstances."
*Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). Central
to the analysis is whether the plaintiff was "without any fault"
in pursuing his claim. *Fed. Election Comm'n v. Williams*,
104 F.3d 237, 240 (9th Cir. 1996).

With regard to the second showing, "a garden variety
claim of excusable neglect, such as a simple miscalculation
that leads a lawyer to miss a filing deadline, does not warrant
equitable tolling." *Holland*, 130 S. Ct. at 2564 (internal
quotation marks and citations omitted). Instead, a litigant
must show that "extraordinary circumstances were the cause
of his untimeliness and . . . ma[de] it impossible to file [the
document] on time." *Ramirez*, 571 F.3d at 997 (internal
quotation marks and citations omitted) (second alteration in
original). Accordingly, "[e]quitable tolling is typically
granted when litigants are unable to file timely [documents]
as a result of external circumstances beyond their direct
control." *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir.
2008).

Applying these longstanding principles in this case, we conclude that whatever may be the case regarding other bases for tolling, Wong's circumstances easily justify equitable tolling. As noted, Wong's claim was untimely because it was not filed within the six-month window running from December 3, 2001—the date on which the INS denied Wong's administrative claim—to June 3, 2002. That result was not the consequence of any fault or lack of due diligence on Wong's part. If anything, Wong took special care in exercising due diligence: Wong first sought leave to file her amended complaint "on or after November 20, 2001," which was, at the time that request was filed, the first day following exhaustion of her administrative remedies on which Wong would have been permitted to file her claim in the district court. And, even after the INS denied her claim, thereby starting anew the six-month deadline under § 2401(b), *see Lehman*, 154 F.3d at 1014–15, Wong filed a Reply Memorandum reiterating her request to file an amended complaint including the FTCA claim. As the Magistrate Judge noted, it was "due solely to the delay inherent in the Magistrate Judge system" that no action was taken with respect to those requests until the six-month limitations period had already run. Moreover, by informing the parties and the court of her desire to file an FTCA claim well before the filing deadline and requesting leave to do so, Wong fulfilled the notice concern that partially underlies limitations statutes. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

We are not persuaded by the government's assertion that Wong was dilatory in seeking to file her claim because she did not expressly request a timely ruling from the district court. Nor are we persuaded that Wong should have filed an

entirely new complaint alleging the FTCA claim rather than waiting for a ruling on the motion to amend. Wong was entitled to expect a timely ruling on her request to amend, which was made with a great deal of time to spare. And filing a new suit on the same facts as one pending would have been inefficient for all concerned—which is why amendments alleging new causes of action on the same factual allegations are permitted. *See* Fed. R. Civ. P. 15. Thus, Wong put forth the "effort that a reasonable person might be expected to deliver under . . . her particular circumstances." *Busby*, 661 F.3d at 1015.

In short, Wong's claim was rendered untimely because of external circumstances beyond her control. In light of these circumstances, we conclude that equitable tolling properly applies to excuse Wong's late-filed amended complaint, and that her FTCA claim against the United States therefore may proceed.

**REVERSED and REMANDED.**

Chief Judge KOZINSKI, concurring in the judgment:

I agree with Judges Tashima and Bea that 28 U.S.C. § 2401(b) is jurisdictional, but can't dissent because a plaintiff like Wong who begins her FTCA action too early can cure the defect by filing a motion to amend the premature complaint. *See Valadez-Lopez* v. *Chertoff*, 656 F.3d 851, 855–58 (9th Cir. 2011). Wong filed such a motion before she had finally exhausted her administrative remedies, which was too soon. *See* 28 U.S.C. § 2675(a); *McNeil* v. *United States*, 508 U.S. 106, 112–13 (1993). But, on December 10, 2001,

after the INS denied her claim and before the six-month section 2401(b) window slammed shut, Wong filed a reply memorandum reiterating her request for leave to file a second amended complaint.

While we don't typically treat a reply as a motion, there's nothing to preclude us from doing so. In this case, Wong's request had all the physical attributes of a motion: It was made in writing, filed with the court, served on the other side, prayed for relief and "state[d] with particularity" why she was entitled to it. *See* Fed. R. Civ. P. 7(b). She pointed out that "the court currently has jurisdiction over plaintiffs' FTCA claims and plaintiffs should be allowed to amend the complaint to add those claims." In her conclusion, she again prayed for this relief: "[P]laintiffs should be granted leave to file their Second Amended Complaint."

The government concedes that if Wong moved for leave to amend her complaint during the six months following the INS's denial of her claim, she's entitled to maintain her lawsuit. *Cf. McNeil*, 508 U.S. at 107–10 & n.5; *Valadez-Lopez*, 656 F.3d at 855–58. Wong *did* file such a motion, albeit within a document captioned "Reply Memorandum."

The majority claims that construing Wong's reply as a motion would be "novel," maj. op. 43, but we regularly treat non-motion filings as motions when equity calls for it. *See, e.g.*, *United States* v. *Rewald*, 835 F.2d 215, 216 (9th Cir. 1987) (construing notice of appeal as motion for remand); *United States* v. *Aguirre-Pineda*, 349 Fed. App'x. 212, 2009 WL 3368445, at *1 (9th Cir. 2009) (construing letter as motion for appointment of counsel); *Rapanan* v. *Nikkei Manor/Nikkei Concerns*, 42 Fed. App'x. 976, 2002 WL 1891677 (9th Cir. 2002) (construing letter as motion for

extension of time to request oral argument). And there's certainly nothing novel about finding a motion nested within a document that serves another purpose. *See, e.g.*, *United States* v. *Harvey*, 55 Fed. App'x. 445, 446 (9th Cir. 2003) (construing opening brief as motion to withdraw as counsel of record). Sometimes, we're even required to do so. *See, e.g.*, Ninth Circuit Rule 22-1(e) ("Uncertified issues raised and designated in [an appellant's opening brief] will be construed as a motion to expand the COA. . . ."). But even if it were novel, so what? Novelty is not an enemy of justice; we're judges, not plumbers.

We owe Wong the benefit of our compassion and creativity. After all, had the district court acted on her motion within the section 2401(b) six-month period, she wouldn't be in this fix. But the court took more than seven months to act on this routine motion—a delay Wong didn't cause and couldn't have foreseen. The government suggests that, instead of waiting for the district court to act on her motion, Wong should have refiled it. Yeah, right. How many litigants have the nerve to vex a federal judge with a clone motion while the original is still pending? Bad things can happen to those who twist the tiger's tail. *See, e.g.*, *Nugget Hydroelectric, L.P.* v. *Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (affirming imposition of sanctions for filing duplicative motions). Instead, Wong used her reply sensibly: She reiterated her request to amend, advanced new arguments in support of that request and pointed out that the court had acquired jurisdiction to grant it. To treat Wong's document as a legal nullity because she called it a reply rather than a motion is inequitable and nonsensical. I thought we had abandoned such pedantry in 1938. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1196 (3d ed. 2004) ("Fortunately, under federal practice the

technical name attached to a motion or pleading is not as important as its substance."); *see also* Jack B. Weinstein, *The Ghost of Process Past: The Fiftieth Anniversary of the Federal Rules of Civil Procedure and* Erie, 54 Brook. L. Rev. 1, 2–3 (1988) ("When the Rules were first adopted, they were optimistically intended to clear the procedural clouds so that the sunlight of substance might shine through.").

The majority claims that construing Wong's reply as satisfying section 2401(b) would itself be "an equitable adjustment of the usual application of limitations periods." Maj. op. 43. If we're willing to do that, my colleagues argue, we should avoid this procedural "thicket" and just equitably toll the statute of limitations. *Id.* "In the end," the majority concludes, "there is little difference in the underlying justification between" its approach and mine. *Id.* But the FTCA's text, context and relevant historical treatment prohibit equitable tolling of the statutory deadline, not equitable construction of court filings. The majority and I may emerge on the same side—but I take the road our law provides. And that makes all the difference.

*McNeil* v. *United States*, 508 U.S. 106 (1993), confirms this. *McNeil* dealt with section 2675(a), a different timing provision of the FTCA, which bars instituting an action in federal court before the administrative claim is "finally denied by the agency." 508 U.S. at 111 (quoting 28 U.S.C. § 2675(a)). The Court held in no uncertain terms that this exhaustion requirement is jurisdictional. *McNeil*, 508 U.S. at 113; *see also* Bea Dissent at 90. But it also left open the possibility that a plaintiff who had filed a complaint prematurely might, after agency denial, file something else that "constitute[s] the commencement of a new action." *McNeil*, 508 U.S. at 110–11. The Court explained: "As the

case comes to us, we assume that the Court of Appeals correctly held that nothing done by petitioner after the denial of his administrative claim on July 21, 1989, constituted the commencement of a new action." *Id.* at 110. The Court reiterated this later in the opinion: "Again, the question whether the Court of Appeals should have liberally construed petitioner's letter [requesting counsel] as instituting a new action is not before us." *Id.* at 113 n.9. Thus, while finding a similar FTCA timing requirement to be jurisdictional, the Court made clear that the statute didn't impair our traditional power to liberally construe court filings—even mere letters—when equity calls for us to do so. If a letter asking for counsel can be "liberally construed . . . as instituting a new action," why not a reply? The Court saw no contradiction between construing the statute strictly and construing a pleading liberally. That's plenty good enough for me.

The federal judiciary caused Wong's problem, and in good conscience we should use such powers as we have to make it up to her. Had she filed nothing within the relevant time-frame, there would be nothing for us to construe and she'd be barred by the statute. *See* Bea Dissent; Tashima Dissent. But Wong *did* file, and that document contains a crystal clear motion to amend the complaint. We owe it to Wong to recognize this. I therefore concur in the judgment of the majority but in the reasoning of the dissents (as far as they go).

---

TASHIMA, Circuit Judge, joined by BEA, Circuit Judge, dissenting:

I join Judge Bea's dissenting opinion in full. I write separately to clarify the Federal Tort Claims Act's ("FTCA's") legislative history. This history, once understood in full context, dispels any doubt that the FTCA's limitations provision was intended to be jurisdictional.

## I.

Two provisions of the FTCA are central for present purposes – the limitations provision, currently codified at 28 U.S.C. § 2401(b), and the jurisdiction-granting provision, currently codified at 28 U.S.C. § 1346(b). I begin with a brief history of these two provisions.

The FTCA was originally enacted in 1946 as Title IV of the Legislative Reorganization Act. *See* Pub. L. No. 79-601 ("1946 Act"), tit. IV, 60 Stat. 812, 842–47 (1946). Pursuant to the 1946 Act, the provisions of the FTCA were codified in Chapter 20 of Title 28. *See* 28 U.S.C. §§ 921–946 (1946). Among these provisions was the jurisdiction-granting provision, which read, in pertinent part:

> *Subject to the provisions of this chapter*, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of

> personal injury or death caused by the
> negligent or wrongful act or omission of any
> employee of the Government while acting
> within the scope of his office or employment,
> under circumstances where the United States,
> if a private person, would be liable to the
> claimant for such damage, loss, injury, or
> death in accordance with the law of the place
> where the act or omission occurred.

*Id.* § 931(a) (emphasis added). The FTCA thus conferred exclusive federal jurisdiction over tort actions against the United States, but "[s]ubject to the provisions of" Chapter 20. Included within Chapter 20 was the FTCA's limitations provision, then-codified at 28 U.S.C. § 942. *See id.* § 942. Accordingly, as originally enacted in the 1946 Act, the FTCA's grant of jurisdiction was "[s]ubject to" the limitations provision.

Congress recodified and reorganized Title 28 in 1948. *See* Pub. L. 80-773 ("1948 Act"), § 1, 62 Stat. 869 (1948). As part of the recodification, most of the provisions formerly grouped under Chapter 20 were regrouped under Chapter 171. *See id.* at 982–85. The limitations provision, however, was removed from this grouping and placed in its current location in Chapter 161, at 28 U.S.C. § 2401(b). *See id.* at 970–71. There, it was situated alongside 28 U.S.C. § 2401(a), which provides for a six-year statute of limitations in other types of civil actions against the United States. *See id.* at 971.

Also removed from the former Chapter 20 grouping was the jurisdiction-granting provision, which was recodified in Chapter 85, at 28 U.S.C. § 1346(b). *See id.* at 930, 933. Similarly to the limitations provision, this move consolidated

the jurisdiction-granting provision with the other provisions of Title 28 granting jurisdiction in civil actions against the United States. *See id.* at 933. Because the reference to "this chapter" in the opening clause of § 1346(b) was now stale – given that § 1346(b) was no longer in the same chapter as the other FTCA provisions – the clause was changed to read, "Subject to the provisions of chapter 173 of this title." *Id.*

However, there was no Chapter 173 of Title 28. Rather, this was a scrivener's error that should have read Chapter 171. Throughout the drafting history of the 1948 Act, the chapter that would become Chapter 171 – titled "Tort Claims Procedure" – had been designated Chapter 173, with the cross-reference in § 1346(b) corresponding to this designation. *See, e.g.*, H.R. 2055, 80th Cong., chs. 85, 173 (1947). When the chapter was renumbered to 171 via a late Senate amendment, *see* S. Rep. No. 80-1559, at 8 (1948), the drafters simply failed to update the cross-reference in § 1346(b). It is thus evident that, as of the 1948 Act, the opening clause of § 1346(b) should have read, "Subject to the provisions of chapter 171 of this title." Indeed, a year later, Congress amended § 1346(b) to correct this error and change the cross-reference to Chapter 171. *See* Pub. L. 81-55, 63 Stat. 62 (1949); *see also* S. Rep. No. 81-135, at 1–2 (1949).

## II.

The history of the limitations and jurisdiction-granting provisions, as recounted above, taken in conjunction with the considerations discussed below, offer "a clear indication that Congress wanted the [limitations] rule to be jurisdictional." *Henderson ex. rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (internal quotation marks omitted). First, and most importantly, it is plain that the limitations provision was

jurisdictional as of the original 1946 Act, for the grant of jurisdiction was expressly "[s]ubject to" – that is, "contingent or conditional upon" – compliance with that provision. *See* Webster's New World Dictionary 1333 (3d Coll. ed. 1994); *see also* Webster's New International Dictionary 2509 (2d ed. 1940) (defining "subject to" as "[b]eing under the contingency of; dependent upon or exposed to (some contingent action)"). It is difficult to imagine a more "clear statement" as to Congress' intent.[1] *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013).

If one accepts this proposition – which the majority only obliquely disputes[2] – then, in order to find § 2401(b) non-jurisdictional, one must conclude that Congress intended to

---

[1] Of course, this logic dictates that the requirements of Chapter 171 are also jurisdictional. At least two Circuit Courts have so held in accord with this reasoning. *See Mader v. United States*, 654 F.3d 794, 807 (8th Cir. 2011) (en banc) (relying on the "[s]ubject to" language of § 1346(b) in finding the presentment requirements of 28 U.S.C. § 2675(a) jurisdictional); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457–58 (3d Cir. 2010) (relying on the same in finding the sum certain requirement of 28 U.S.C. § 2675(b) jurisdictional). *But see Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008) (holding that the statutory exceptions of 28 U.S.C. § 2680 are not jurisdictional, notwithstanding the language of § 1346(b)).

[2] In a footnote, the majority suggests that the phrase "'[s]ubject to' is more sensibly read to mean that litigants have to follow the prescribed procedures, not that each and every one of those procedures, if not followed, gives rise to the 'drastic' consequences that follow from lack of subject matter jurisdiction." Maj. Op. at 28 n.9. This interpretation not only ignores the ordinary meaning of "subject to," but it would render the opening clause of § 1346(b) surplusage. The very existence of the "prescribed procedures," as standalone statutory provisions, "means that litigants have to follow [them]." Thus, the "[s]ubject to" clause of § 1346(b) would have no substantive import under the majority's reading.

strip the limitations provision of its jurisdictional status only two years later, through the 1948 Act. Under long-established Supreme Court precedent, however, we are not to "presume that the 1948 revision worked a change in the underlying substantive law unless an intent to make such a change is clearly expressed." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008) (internal quotation marks omitted); *see also Keene Corp. v. United States*, 508 U.S. 200, 209 (1993) (citing cases applying this rule). Here, not only is such "clearly expressed" intent lacking, but there is an abundance of evidence to the contrary – that Congress had no desire to alter the jurisdictional status of the limitations provision.

In the Reviser's Notes to the 1948 Act,[3] Congress explained that § 2401 "consolidates" the FTCA's limitations provision with the six-year limitations period of 28 U.S.C. § 2401(a), which, like §2401(b), had formerly been codified elsewhere in Title 28. *See* H.R. Rep. 80-308, at A185 (1947); *see also* 28 U.S.C. § 41(20) (1946) (former section of six-year limitations period). This purely organizational function – to consolidate the provisions of Title 28 setting forth limitations periods in actions against the government – is the obvious reason that Congress separated § 2401(b) from the other FTCA provisions and placed it in chapter 161.[4] If there

---

[3] The Supreme Court has repeatedly relied on the Reviser's Notes in determining whether a substantive change was intended through the 1948 Act. *See, e.g.*, *John R. Sand & Gravel*, 552 U.S. at 136; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989).

[4] The same purpose was carried out with respect to the jurisdiction-granting provision, which was consolidated in § 1346 with the other provisions of Title 28 granting jurisdiction in civil actions against the government. *See* 1948 Act, § 1, 62 Stat. at 933; *see also* William W.

were any doubt as to whether a substantive purpose was intended, the Reviser's Notes then added, "Subsection (b) of the revised section [2401] simplifies and restates [former 28 U.S.C. § 942], *without change of substance*."  H.R. Rep. 80-308, at A185 (emphasis added).

Congress provided equally definitive guidance in the actual text of the 1948 Act.  In an uncodified provision, Congress instructed, "*No inference of a legislative construction is to be drawn by reason of the chapter in Title 28 . . . in which any [] section is placed*." 1948 Act, § 33, 62 Stat. at 991 (emphasis added).  Of course, precisely such an inference is required to find § 2401(b) non-jurisdictional, because one must assume that Congress intended to alter the jurisdictional status of the limitations provision by removing it from the FTCA Chapter and placing it in Chapter 161.

In short, there is no indication – let alone a "clearly expressed" indication – that Congress intended to alter the jurisdictional status of the limitations provision through the 1948 Act.

## III.

The majority offers several responses to this historical evidence, none of which is persuasive.  First, the majority contends that "it is improper to consider legislative history" because the statutory text is "plain."  Maj. Op. at 24.  It is a curious statute that is unambiguous but manages to produce

Barron, The Judicial Code: 1948 Revision, 8 F.R.D. 439, 445 (1949) ("The statutes conferring jurisdiction . . . are consolidated into a single section.  The revised section consolidates and clarifies three widely separated provisions of the former code.").

an intracircuit split, several en banc dissents, and dozens of pages of analysis by the majority to justify its conclusion. These considerations aside, the fact is that the goal of the jurisdictional inquiry is "to ascertain Congress' intent." *Henderson*, 131 S. Ct. at 1204. The majority recognizes that we must look to factors such as "context" and "relevant historical treatment" to discern this intent, Maj. Op. at 11 (quoting *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1246 (2010)), but it provides no reason why legislative history may not similarly be considered.[5] The majority, in effect, invokes the requirement that there be evidence of clear congressional intent, and it then seeks to shut the door on the very evidence that could support this showing.

Perhaps recognizing that its "plain text" argument sits on shaky ground, next, the majority implicitly acknowledges that the limitations provision was jurisdictional under the original 1946 Act, but it contends that the 1948 revision undid this status. Maj. Op. at 25–28. In this regard, the majority does at least make a passing reference to the rule that we are not to presume the 1948 Act effected substantive change unless "clearly expressed." Maj. Op. at 27. According to the majority, though, such clear expression can be found in Congress' amending the cross-reference in § 1346(b) to Chapter 171, which did not include the limitations provision. Maj. Op. at 27.

---

[5] As described below, the legislative history is particularly probative of congressional intent in the instant case given that the focus is on the statutory scheme as *enacted* by Congress, and given that this enactment occurred only two years prior to the adoption of the current statutory language.

This argument quickly falls apart upon considering the history of the two key provisions. As explained, the removal of the limitations provision from the FTCA Chapter was solely for organizational purposes, to consolidate the provisions of Title 28 setting forth limitations periods in actions against the government. Likewise, the redesignation of the cross-reference in § 1346(b), to Chapter 171, was merely an artifact of reorganization. The jurisdiction-granting provision previously referenced "this chapter" – referring to the FTCA Chapter of Title 28 – but this reference became outdated once the jurisdiction-granting provision was stripped out of the FTCA Chapter. Congress simply updated the cross-reference, inserting the new number of the FTCA Chapter, Chapter 171. In the end, therefore, the majority's argument is entirely circular. The majority relies on the reorganization, and nothing else, as a clear expression that the reorganization effected substantive change.[6]

Finally, the majority falls back on the notion that the FTCA's "drafting history" cannot supply a clear statement of Congress' intent. Maj. Op. at 27–28. The 1946 Act, however, does not reflect "drafting history." It is the

---

[6] The majority contends that, under my treatment of the legislative history, the limitations period would remain jurisdictional regardless of "what Congress wrote into the FTCA's jurisdictional grant in 1948." Maj. Op. at 27. Hardly the case. If Congress truly intended to alter the provision's jurisdictional status, it could have provided an affirmative statement to this effect in the text of the 1948 Act, in the Reviser's Notes, or elsewhere in the legislative history. *See* Barron, *supra*, at 446 ("Congress . . . includ[ed] in its reports the complete Reviser's Notes to each section in which are noted all instances where change is intended and the reasons therefor."). The requirement that Congress affirmatively express such an intent is not one I have created, but one that is mandated as a matter of Supreme Court doctrine. *See Keene Corp.*, 508 U.S. at 209.

statutory scheme as enacted by Congress. And it is the scheme put into place only two years prior to the revisions that produced the current statutory language, revisions that we are to presume did not effect any substantive change. Under these circumstances, it is entirely reasonable to rely on the 1946 Act as providing a "clear indication" of Congress' intent. *Henderson*, 131 S. Ct. at 1205.

## IV.

Given the legislative history recited above, I have little difficulty concluding that the FTCA's limitations provision was intended to be jurisdictional. Congress provided a clear statement to this effect when enacting the provision in 1946. When reorganizing Title 28 only two years later, Congress did not "clearly express[]," or provide any indication at all, that it intended to disturb this status. For these reasons, as well as the reasons outlined in Judge Bea's dissenting opinion, I respectfully dissent.

---

BEA, Circuit Judge, with whom TASHIMA, Circuit Judge, joins, dissenting:

The majority opinion permits courts, for equitable reasons, to extend the time in which a tort action can be begun against the Government, after the obligatory administrative claim has been filed and denied. Because I believe Congress clearly expressed its intent that 28 U.S.C. § 2401(b) would limit the jurisdiction of federal courts by providing that tort claims "shall be forever barred" unless action is begun within the six-month period following denial

of the administrative claim by the concerned agency, with no exceptions, I respectfully dissent.

## I.  The "Jurisdictional" vs. "Claim-Processing" Distinction and Our Inquiry

The majority is correct, of course, in noting that the Supreme Court has created a rebuttable presumption that equitable tolling applies to suits against the United States. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990).[1]  But that presumption is not universally applicable. As the majority admits, it has no application to certain kinds of "more absolute" statutes of limitations.  *See John R. Sand*

---

[1] In *Irwin*, the petitioner was fired from his job by the Veterans' Administration ("VA").  *See id.* at 90.  He filed a complaint with the VA, alleging that it had unlawfully discharged him on the basis of race and physical disability.  *See id.* at 91.  The VA dismissed the complaint, and the Equal Employment Opportunity Commission ("EEOC") affirmed that decision.  *See id.*  The petitioner had the right to file a civil action in district court but was required to do so within 30 days of the EEOC's affirmance.  *See id.* (citing 42 U.S.C. § 2000e-16(c)).  The petitioner filed a complaint in district court 44 days after his attorney's office received the EEOC's notice, which was only 29 days after the date on which he claimed to have received the notice.  *See id.*  The district court held that the limitations period began when the attorney's office received the notice and granted the VA's motion to dismiss for lack of jurisdiction.  *See id.* The Fifth Circuit affirmed and held that compliance with § 2000e-16(c)'s time limit was a jurisdictional requirement.  *See id.*  The Supreme Court held that § 2000e-16(c)'s time limit was not jurisdictional; instead, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  *Id.* at 95–96.  Because the principles of equitable tolling did "not extend to what is at best a garden variety claim of excusable neglect," however, the Court affirmed the dismissal.  *See id.* at 96.

*& Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008).**[2]** These "more absolute" statutes "seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." *Id.* at 133. The Court has described the time limits in such statutes of limitations as "jurisdictional." *See id.* at 134.

The majority believes the distinction between these "more absolute" or "jurisdictional" statutes, to which courts cannot create exceptions based on equitable considerations, and mere "claim-processing rules," to which *Irwin*'s rebuttable presumption applies, is "critical for present purposes." *See* Op. at 8–9. The majority calls § 2401(b) a "quintessential claim-processing rule," *see* Op. at 18, but calling something

---

**[2]** In *John R. Sand & Gravel*, the petitioner filed an action in the Court of Federal Claims, asserting that various Environmental Protection Agency activities on land it leased for mining purposes amounted to an unconstitutional taking of its leasehold rights. *See id.* at 132. The Government initially asserted that the claims were untimely under 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *See id.* (quoting 28 U.S.C. § 2501). The Government later conceded that certain claims were timely, and subsequently won on the merits. *See id.* On appeal, the Court of Appeals for the Federal Circuit held that the action was untimely filed and should have been dismissed for that reason. *See id.* at 133. The Supreme Court affirmed and held that compliance with § 2501's time limit is a jurisdictional requirement. *See id.* at 138–39. As noted below, the Court also explained the difference between jurisdictional statutes of limitations and those to which *Irwin*'s presumption can be applied. *See id.* at 133–34.

a name does not change its nature.**[3]**  And the critical question is not whether *we* characterize § 2401(b) as a "quintessential claim-processing rule," *see* Op. at 18, but whether *Congress* mandated that its prescribed time limit be jurisdictional, *see Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (noting that "Congress is free to attach the conditions that go with the jurisdictional label to a rule that [courts] would prefer to call a claim-processing rule.").**[4]**  To make this determination, the court must "look to see if there is any clear indication that Congress wanted the rule to be jurisdictional." *Id.* (internal quotation marks and citation omitted).  And, to find such a "clear indication," we must examine the statute's "text,

---

**[3]** The majority ignores the simple truth contained in the aphorism ascribed, perhaps apocryphally, to Abraham Lincoln: "If you call a tail a leg, how many legs has a dog?  Five?  No, calling a tail a leg don't make it a leg."

**[4]** In *Henderson*, the petitioner, a veteran of the Korean War who had been given a 100-percent disability rating for paranoid shizophrenia, filed a claim with the Department of Veterans Affairs ("VA") for supplemental benefits based on his need for in-home care.  *See id.* at 1201.  The VA regional office and Board of Veterans' Appeals denied the petitioner's claim.  *See id.*  The petitioner filed a notice of appeal with the Veterans Court, but he missed the 120-day filing deadline by 15 days.  *See id.* (citing 38 U.S.C. § 7266(a)).  The Veterans Court dismissed the appeal for lack of jurisdiction, treating compliance with the 120-day deadline as a jurisdictional requirement.  *See id.* at 1202.  The Federal Circuit affirmed. *See id.*  Because § 7266(a) "provide[d] no clear indication that Congress wanted the provision to be treated as having jurisdictional attributes," the Supreme Court reversed and held that the 120-day limitation period was not jurisdictional.  *Id.* at 1205–06.

context and relevant historical treatment." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).[5]

## II.  The Statute's Text

Section 2401(b) provides, in relevant part, that "[a] tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

### A.  Reading § 2401(b) with § 2675.

Perhaps where the majority goes wrong is in considering § 2401(b) as a stand-alone statute of limitations, rather than considering it in conjunction with the complementary administrative exhaustion requirement of 28 U.S.C. § 2675. The Court has instructed against such a restrictive view of

---

[5] In *Reed Elsevier*, authors, some of whom had registered copyrights for their works and others who had not, sued publishers and electronic databases for copyright infringement. *See id.* at 158.  The parties settled and filed a motion in federal district court to certify a class for settlement and approve the settlement agreement. *See id.* at 159.  Ten freelance authors ("the Muchnick respondents") objected. *See id.* The district court overruled those objections, certified a settlement class of freelance authors, approved the settlement, and entered final judgment. *See id.* The Muchnick respondents appealed, and the Second Circuit held that the district court lacked jurisdiction to certify a class of claims arising from the infringement of unregistered works.  *See id.* at 159–60 (citing 17 U.S.C. § 411(a), which provides, in relevant part, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made").  The Supreme Court reversed and held that § 411(a) imposed a non-jurisdictional precondition to suit. *See id.* at 166.

statutory conditions for bringing suit. *See United States v. Dalm*, 494 U.S. 596, 601 (1990).**⁶** Instead, courts should read together "provisions which qualify an [individual]'s right to bring . . . suit upon compliance with certain conditions." *Id.***⁷**

---

**⁶** In *Dalm*, the respondent had been appointed administratrix of her employer's estate. *See id.* at 598. In return for her services, she received fees from the estate and two payments from the employer's surviving brother. *See id.* at 599. The respondent reported the latter payments as gifts and paid the appropriate gift tax. *See id.* The Internal Revenue Service ("IRS") audited the respondent's income tax returns and determined that the payments should have been reported as income. *See id.* The respondent petitioned the Tax Court for a redetermination but subsequently settled the case. *See id.* After she agreed to the settlement, the respondent immediately filed an administrative claim for return of the gift tax she had paid. *See id.* When the IRS failed to act on her claim within six months, she filed suit in district court, seeking a refund of "overpaid gift tax." *Id.* at 600. The district court granted the Government's motion to dismiss the suit for lack of jurisdiction, because the respondent's suit was untimely under the applicable statute of limitations: 26 U.S.C. § 6511(a). *See id.* The Sixth Circuit reversed and held that the doctrine of equitable recoupment should be applied to permit the respondent's suit to proceed. *See id.* The Supreme Court reversed and held that the district court did not have jurisdiction to entertain the untimely action. *See id.* at 610.

**⁷** In *Dalm*, there were two such provisions. *See id.* at 601–02 (stating that 26 U.S.C. § 7422, which provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary," and 26 U.S.C. § 6511(a), which provides that, if a taxpayer is required to file a return with respect to a tax, the "[c]laim for refund or credit . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later," were both relevant qualifications on a taxpayer's right to bring a refund suit). Because both provisions established conditions on a taxpayer's right to bring suit, the Court read them together. *See id.* at 602 ("Read together, the import of these sections is clear: unless a claim for

Here, two statutory provisions qualify an individual's right to file suit for tort against the United States. *See* 28 U.S.C. § 2675(a); 28 U.S.C. § 2401(b). First, § 2675 provides that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . , unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). This section requires that an administrative claim be made to the responsible agency, and it disallows suit until the denial of such claim is final. *See id.* No such administrative claims filing is needed to commence an action against a private person under applicable state law. *Irwin*, 498 U.S. at 96 (reasoning that principles "applicable to suits against private defendants should also apply to suits against the United States").

Section 2401(b) is § 2675(a)'s logical complement. It provides that:

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or action is begun within six months after the date of mailing, by certified or registered

refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." (citations omitted)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

> mail, of notice of final denial of the claim by
> the agency to which it was presented.

28 U.S.C. § 2401(b).  This provision establishes the time limits applicable to presenting an administrative claim and beginning a civil action.  As in *Dalm*, the import of these two sections is clear when they are read together: Unless an administrative claim is presented to the responsible agency before action is begun, and unless both the claim and the action are begun within the time limits imposed by § 2401(b), the tort claim against the United States "shall be forever barred."

## B. Section 2401(b) Refers to Courts' Jurisdiction.

The majority holds, in a rather conclusory fashion, that § 2401(b) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the federal courts."  Op. at 15 (internal quotations and citations omitted).  I disagree.  While it is true that § 2401(b) does not mention the term "jurisdiction," the same is true of several statutes of limitations the Court has found to be jurisdictional.  *See John R. Sand & Gravel*, 552 U.S. at 134 (holding 28 U.S.C. § 2501 jurisdictional, despite the absence of the term "jurisdiction"); *Bowles v. Russell*, 551 U.S. 205, 213 (2007) (same with respect to 28 U.S.C. § 2107(a) and (c))[8]; *Dalm*, 494 U.S. at

---

[8] In *Bowles*, an Ohio jury convicted the petitioner of murder and sentenced him to 15-years-to-life imprisonment.  *See id.* at 207.  The petitioner unsuccessfully challenged his conviction and sentence on direct appeal, and then filed a federal habeas corpus petition.  *See id.*  The district court denied habeas relief.  *See id.*  After the entry of final judgment, the petitioner had 30 days to file a notice of appeal.  *See id.* (citing 28 U.S.C. § 2107(a)).  He failed to do so.  *See id.*  Instead, he later filed a motion to reopen the period in which to file a notice of appeal

609 (same with respect to 26 U.S.C. § 7422(a) and 26 U.S.C. § 6511(a)).**[9]** The majority fails to appreciate a crucial difference between the statutes of limitations the Court has deemed jurisdictional and those to which the Court has applied equitable tolling: whether the statute expressly mandates a consequence for the failure timely to file.

### 1. Plain Statutes of Limitations: No Consequences Mandated for Failure Timely to File

Some statutes of limitations require that certain actions be performed within a specified period of time without specifying consequences to be applied where the actions are not performed as prescribed. *See, e.g.*, 17 U.S.C. § 411(a) ("[Subject to certain exceptions], no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a

---

under 28 U.S.C. § 2107(c), which allows district courts to extend the filing period for 14 days. *See id.* The district court granted the motion to reopen, but "inexplicably gave [the petitioner] 17 days," instead of the 14 days permitted by statute. *See id.* The petitioner filed his notice of appeal after the 14-day period allowed by statute but within the 17 days allowed by the district court. *See id.* The Sixth Circuit held that it lacked jurisdiction to entertain the appeal, because the notice of appeal was untimely filed. *See id.* The Supreme Court affirmed and held that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Id.* at 214.

**[9]** Unfortunately, the Court has not yet analyzed whether § 2401(b) is or is not jurisdictional. We must therefore use what tools the Court has given us in its discussions of similar statutory provisions and reason by analogy.

State court."); 38 U.S.C. § 7266(a) ("In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed . . . ."); F. R. Bankr. P. 4004(a) ("[A] complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)."). These statutes, as evidenced by the quotations above, are often written in mandatory terms. Significantly, while they make *parties*' actions mandatory, they do not contain mandatory *consequences* for noncompliance.

The Court has instructed that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003).[10] It makes good sense,

---

[10] In *Barnhart*, the Court addressed 26 U.S.C. § 9706(a)'s requirement that the Commissioner of Social Security assign, before October 1, 1993, each coal industry retiree eligible for benefits to an operating company or related entity, which would then be responsible for funding the assigned beneficiary's benefits. *See id.* at 152–53. The Commissioner did not complete all the assignments by the statutory date, and several coal companies challenged the Commissioner's by then tardy assignments. *See id.* at 156. The companies obtained summary judgments in each case, and the Sixth Circuit affirmed. *See id.* at 157. The Supreme Court held that it was "unrealistic to think that Congress understood unassigned status as an enduring 'consequence' of uncompleted work, for nothing indicates that Congress even foresaw that some beneficiaries matchable with operators still in business might not be assigned before October 1, 1993." *Id.* at 164–65. Thus, it read the statutory deadline as "a spur to prompt action, not as a bar to tardy completion of the business of ensuring that benefits are funded . . . by those identified by Congress as principally

then, that the Court has regularly held that statutes of limitations lacking provisions specifying consequences do not speak in jurisdictional terms or refer to the courts' jurisdiction. *See, e.g.*, *Henderson*, 131 S. Ct. at 1204 (holding that the terms of 38 U.S.C. § 7266(a) "do not suggest, let alone provide clear evidence, that the provision was meant to carry jurisdictional consequences"); *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (holding that 28 U.S.C. § 2244(d)(1) "does not set forth an inflexible rule requiring dismissal whenever its clock has run" (internal quotation marks and citations omitted))[11]; *Reed Elsevier*,

---

responsible." *Id.* at 172.

[11] In *Holland*, the petitioner was convicted of first-degree murder and sentenced to death. *See id.* at 2555. The Florida Supreme Court affirmed that judgment, and, on October 1, 2001, the Supreme Court denied the petition for certiorari. *See id.* On that date, 28 U.S.C. § 2244(d)'s one-year statute of limitations for filing a habeas petition began to run. *See id.* On September 19, 2002 (i.e. 12 days before the one-year limitations period expired), a state-appointed attorney filed a motion for post-conviction relief in the state court, which automatically stopped the running of the limitations period. *See id.* In May 2003, the state trial court denied relief. *See id.* By February 2005, when the Florida Supreme Court heard oral argument in the case, the petitioner and his appointed attorney rarely communicated. *See id.* Indeed, the petitioner asked the Florida Supreme Court to remove the attorney from his case because of a "complete breakdown in communication," including a failure to keep him informed of the case's status. *See id.* The Florida Supreme Court denied the petitioner's request. *See id.* at 2556. The petitioner subsequently wrote the attorney several times and emphasized the importance of filing a timely petition for habeas corpus in federal court once the Florida Supreme Court ruled against him. *See id.* In November 2005, the Florida Supreme Court affirmed the denial of post-conviction relief. *See id.* On December 1, 2005, it issued its mandate, and the federal habeas clock began again to tick. *See id.* Twelve days later, the one-year limitations period expired, with the petitioner never having been informed that the Florida Supreme Court had made a ruling. *See id.* at 2556–57. When the

559 U.S. at 165 (holding that 17 U.S.C. § 411(a) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts" (citation omitted)); *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (holding that "the filing deadline[] prescribed in Bankruptcy Rule[] 4004 . . . do[es] not delineate what cases bankruptcy courts are competent to adjudicate").**12** These cases stand for the general proposition identified above: If the statutory text does not mandate dismissal as the consequence for noncompliance, the courts should not read the statute as having jurisdictional consequences (i.e. mandatory dismissal without exception).

---

petitioner learned of the adverse ruling on January 18, 2006, he immediately wrote a pro se habeas petition and mailed it to the district court. *See id.* at 2557. The district court held that equitable tolling was unwarranted because the petitioner did not seek help from the court system to determine when the mandate issued. *See id.* The Eleventh Circuit affirmed and held that the attorney's negligence could never constitute an "extraordinary circumstance" sufficient to toll the limitations period. *See id.* The Supreme Court rejected the district court's erroneous determination that the petitioner had not been diligent and the Eleventh Circuit's rigid, categorical approach. *See id.* at 2565. It then held that § 2244(d)'s time limit was subject to equitable tolling and remanded for further proceedings. *See id.* at 2565.

**12** In *Kontrick*, a creditor objected to a debtor's discharge in a liquidation proceeding. *See id.* at 446. The applicable rule provided that such an objection had to be made within "60 days after the first date set for the meeting of creditors." *Id.* (quoting Fed. R. Bkrtcy. P. 4004(a)). The creditor's objection was untimely under this rule. *See id.* The debtor did not file a motion to dismiss the objection as untimely, however, until after the Bankruptcy Court decided that the discharge should be refused. *See id.* The Bankruptcy Court held that the time limit was not jurisdictional, and the Seventh Circuit affirmed. *See id.* at 447. The Supreme Court affirmed and held that Rule 4004(a) was not jurisdictional, so that "a debtor forfeits the right to rely on Rule 4004 if the debtor does not raise the Rule's time limitation before the bankruptcy court reaches the merits of the creditor's objection to discharge." *Id.*

Instead, per *Irwin*'s instruction, the courts should presume equitable tolling may be applied to the statute in question, and then proceed to determine whether that presumption has been rebutted and, if not, whether the running of the timing provision should be tolled for equitable reasons. *See Irwin*, 498 U.S. at 95–97.[13]

## 2. Consequence Statutes of Limitations: Mandatory Consequences for a Failure Timely to File

In contrast, however, are statutes of limitations that specify the consequences of a party's failure to adhere to a prescribed time limit. *See, e.g.*, 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."); 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); 28 U.S.C. § 2107(a) ("Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree."); 28 U.S.C. § 2409a(g) ("Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced

---

[13] Of course, if the court finds that the presumption has been rebutted or that no equitable considerations justify tolling the statute, it should dismiss the complaint for failure to comply with the statute of limitations. The key consideration here is that, when a statute does not specify mandatory consequences for failure timely to act, the court is permitted to rely on *Irwin*'s presumption that equitable tolling applies. Nothing in the text of that statute suggests that the presumption should not apply.

within twelve years of the date upon which it accrued."). Like the first category of statutes discussed *supra*, these statutes speak in mandatory terms. They do not, however, merely require that parties take actions at specified times. Instead, these statutes require the courts to respond in a certain way to a party's failure to timely act by making the *consequences* of noncompliance, rather than just the acts, mandatory.

It is clear, then, that there are two different kinds of mandatory provisions: (1) those that make certain actions mandatory on the parties but do not specify the consequences of noncompliance, and (2) those that also provide mandatory consequences for failures to act according to their prescriptions. The Court has mentioned the importance of this distinction in the past. *See Henderson*, 131 S. Ct. at 1204 (holding a statute nonjurisdictional in part because its language did "not suggest, let alone provide clear evidence, that the provision was meant to carry jurisdictional consequences"); *Holland*, 130 S. Ct. at 2560 (noting that the nonjurisdictional statute did "not set forth an inflexible rule requiring dismissal whenever its clock has run" (internal quotation marks and citations omitted)). I agree with the majority that not all mandatory prescriptions are properly categorized as jurisdictional. *See* Op. at 18. But I also believe that, to determine which mandatory prescriptions are jurisdictional, we must pay close attention to precisely *what* Congress has made mandatory (i.e. a party's action or the consequences for a party's failure timely to act). Thus, when Congress has mandated that a particular consequence will accompany a party's noncompliance with statutory timing provisions, courts are not free to impose other consequences or, as the majority does in this case, to fail to impose any consequence at all.

The reason is simple: When Congress mandates that a particular *consequence* be imposed, it limits the court's power to act. When the consequence is that the claim "shall be barred" or the case "shall not be maintained," Congress has spoken in jurisdictional terms.[14] *Cf. John R. Sand & Gravel*, 552 U.S. at 134 (holding that 28 U.S.C. § 2501, which includes "shall be barred" language, is jurisdictional); *Dalm*, 494 U.S. at 609 (holding that 26 U.S.C. § 6511(a), which, when read with 26 U.S.C. § 7422(a), includes "may not be maintained" language, is jurisdictional). The majority holds that *John R. Sand & Gravel* and *Bowles* "did not hold [the statutes at issue] jurisdictional based on the consequential language of the statute" but because of "a century's worth of precedent and practice in American courts." Op. at 19, n.3. But what was that "century's worth of precedent" based on? The Court's ancient recognition that some statutes of limitations have *consequences*. *Kendall v. United States*, 107 U.S. 123, 125 (1883) (statute of limitation "forever barred" "*every claim*"); *Finn v. United States*, 123 U.S. 227, 332 (1887) (holding that the express words of the act of 1863—stating claims were "forever barred"—was a condition to the right to a judgment against the United States and the court *must* dismiss the petition if the condition was not satisfied). Such consequences speak to "the courts' statutory

---

[14] I acknowledge that such a holding may conflict with *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997), but, for reasons discussed *infra* at 79–83, I believe that case is inconsistent with subsequent Supreme Court cases and is no longer good law.

Further, by giving examples of when Congress has spoken in jurisdictional terms I am not relying on "magic words" that must be included. Op. at 19. These phrases are merely examples of terms which mandate that a particular consequence must be imposed, and that *consequence* is what makes the statute jurisdictional.

. . . power to adjudicate the case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). To illustrate this point, one asks: What statutory power does a court have to adjudicate a claim which, according to congressional mandate, "shall be barred" or "shall not be maintained?" The answer is simple: None.[15] It seems natural, then, to conclude that when a statute includes such language, it speaks in jurisdictional terms. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes speak to the power of the court rather than to the rights of obligations of the parties." (citation omitted)).[16]

---

[15] This fact separates the two kinds of statutes of limitations. When a statute does not specify a mandatory consequence, the operation of *Irwin*'s presumption makes sense (i.e. courts can generally assume Congress intended equitable tolling to apply unless something suggests otherwise). When Congress specifies a mandatory consequence, however, courts should assume Congress meant what it said (i.e. that the consequence is mandatory and applicable in every case).

[16] Unfortunately, while the Court has stated, on several occasions, that a particular statute does not speak in jurisdictional terms, *see ante* at 68, it has not clarified exactly when a statute does speak in jurisdictional terms. Still, the Court has held that the statutes in the second category above are jurisdictional. *See John R. Sand & Gravel*, 552 U.S. at 134 (holding that 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrued," is jurisdictional); *Bowles*, 551 U.S. at 213 (holding that 28 U.S.C. § 2107(a) and (c), which provide that "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after entry of such judgment, order or decree," except that a court may "extend the time for appeal upon a showing of excusable neglect or good cause," is jurisdictional); *Dalm*, 494 U.S. at 609 (holding that 26 U.S.C. § 6511(a), which, when read with 26 U.S.C. § 7422(a), provides that "unless a claim for refund of a tax has been filed within the time limits . . . , a suit for refund . . . may not be maintained in any court,"

Section 2401(b) falls into the second category identified above.  It does not merely specify what a party must do; it specifies the consequences of a failure to act according to its time limit.  If action is not begun within six months after the agency mailed its final denial of the claim, such claim "shall be forever barred."  *See* 28 U.S.C. § 2401(b).  Because the court has no statutory power to adjudicate such a claim, I would hold that, unlike the statute considered in *Holland*, § 2401(b) "set[s] forth an inflexible rule requiring dismissal whenever its clock has run."  *Holland*, 130 S. Ct. at 2560.  In that manner, and unlike the statute considered in *Henderson*, the language of § 2401(b) "provide[s] clear evidence[] that the provision was meant to carry jurisdictional consequences."  *Henderson*, 131 S. Ct. at 1204.  Thus, its pronouncement "speak[s] in jurisdictional terms" or, at the very least, "refer[s] in any way to the jurisdiction of the district courts."  *Reed Elsevier*, 559 U.S. at 165.[17]

---

is jurisdictional).  It has also mentioned the kind of language that would speak in jurisdictional terms.  *See Henderson*, 131 S. Ct. at 1204 (implying that jurisdictional language would include a suggestion "that the provision was meant to carry jurisdictional consequences"); *Holland*, 130 S. Ct. at 2560 (implying that a statute would speak in jurisdictional language if it "set forth an inflexible rule requiring dismissal whenever its clock has run" (internal quotation marks and citations omitted)).  In any event, as the majority acknowledges, the Court has instructed that Congress "need not incant magic words . . . to speak clearly."  Op. at 11 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013)).  Thus, Congress need not explicitly state that a time limit is jurisdictional; it is free to specify consequences that relate to a court's power to adjudicate cases and trust that the court will understand what those consequences mean.

[17]  While a statute that specifies mandatory consequences is jurisdictional, the reverse is not necessarily true.  *See, e.g.*, *McNeil*, 508 U.S. at 111–12 (holding 28 U.S.C. § 2675, which does not specify mandatory consequences for noncompliance, jurisdictional).  This dissent

The majority calls my delineation of statutes of limitations a "grand theory". Op. at 18. I appreciate their praise, but I humbly submit there is nothing "grand" about following the "clear evidence" provided by Congress and the Supreme Court.

## C. The Importance of the Term "Forever."

The majority escapes this rather straightforward conclusion with the assertion that "§ 2401(b) merely states what is always true of statutory filing deadlines: once the limitations period ends, whether extended by the application of tolling principles or not, a plaintiff is 'forever barred' from presenting his claim to the relevant adjudicatory body." Op. at 15 (citing *Kubrick*, 444 U.S. at 117).[18] The majority has

---

does not imply that the specification of mandatory consequences is the *only* way for Congress to express its intent that a statute be jurisdictional. Congress may express its intent that a statute be jurisdictional in other ways (i.e. it need not incant magic words), and, indeed, a statute may be jurisdictional for reasons other than the text. *See Reed Elsevier*, 559 U.S. at 166 (2010) (instructing courts, in determining whether a statute is jurisdictional, to look to the statute's "text, *context and relevant historical treatment*" (emphasis added)).

[18] I must confess that I have struggled to find which portion of the Court's opinion in *Kubrick* supports the majority's position about what is "ordinarily true of statutory filing deadlines." Op. at 15. Surely it is not this portion: "Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Kubrick*, 444 U.S. at 117. And surely it is not this portion: "We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *Id.* at 117–18. I simply see no

simply written the term "forever" out of the statute, ascribing it no meaning nor importance at all. It is a mere "vestige of mid-twentieth-century congressional drafting conventions,"[19] Op. at 18, and adds nothing that the statute would not say without it, because all statutes of limitations, if applicable, bar claims "forever," *see* Op. at 15–17.

But the majority fails to consider the standard canon of statutory construction that requires courts to give meaning, if possible, to *each* of a statute's terms. *See Lowe v. SEC.*, 472 U.S. 181, 208 n.53 (1985) ("[W]e must give effect to every word that Congress used in the statute."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) (explaining that "[t]he surplusage canon holds that it is no more the court's function to revise by subtraction than by addition."). To the majority, the term "forever" is tautological; it has no meaning whatsoever. But that is not the view of well-established dictionaries at the time the statute was drafted. *See, e.g.*, Webster's New International Dictionary 990 (2d ed. 1943) (defining the adverb "forever" as "1. For a limitless time or endless ages; everlastingly; eternally," and "2. At all times; always; incessantly," and identifying "invariably" and "unchangeably" as synonyms).

Usage of the term "forever," as in "forever barred," connotes something that obtains under any and all circumstances, something that is invariably so. But this is

---

support for the majority's position in *Kubrick*.

**[19]** The majority's deprecatory labelling is off by about 100 years. In *U.S. v. Kendall*, 107 U.S. at 124, the term "forever barred" in the act of March 3, 1863, was definitively interpreted.

nothing new. In *Kendall v. United States*, the Supreme Court interpreted a statute of limitations which included the phrase "forever barred" and stated: "What claims are thus barred? The express words of the statute leave no room for contention. *Every claim*-except those specially enumerated-is forever barred unless asserted within six years from the time it first accrued." 107 U.S. at 125 (emphasis added). Forever, as in "forever barred", has an inclusionary meaning—"every claim"—as well as a temporal meaning—for all time. *Kendall* has continued to be cited approvingly in *Soriano v. United States*, 352 U.S. at 273,[20] and *John R. Sand & Gravel*, 552 U.S. at 134, on the way to holding statutes of limitations "jurisdictional."

As used in § 2401(b), then, the term "forever" means that an FTCA claim is invariably barred unless a civil action is commenced within the six-month period following final denial of the administrative claim. Moreover, according to the majority's theory, the fact that Congress included "forever barred" language in "various other statutes enacted in the mid-twentieth century," *see* Op. at 17, must mean that Congress merely plugged boilerplate language into these provisions, without thinking or assigning any special meaning to the words it chose to employ. But the fact that Congress included the term in *various* limitations periods, and not *all* limitations periods, suggests the exact opposite is true: On the occasions when Congress used the term "forever barred," it did so intentionally and for a reason. It is especially telling that Congress did not adhere to the majority's claimed "drafting convention" when, in 1948, it drafted § 2401(a), the very section that precedes the one here in issue. *See* Act of

---

[20] *John R. Sand & Gravel* held that *Soriano* is still good law. 552 U.S. at 137.

June 25, 1948, chap. 646, 62 Stat. 971 (June 25, 1948) ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (citations omitted)).

The majority finally holds that *if* "forever" does mean anything, it merely focuses on time and emphasizes that "once barred, [a FTCA claim] is precluded permanently, not temporarily or until some later event occurs" and that "the word 'forever' cannot bear [the] weight" that I give it. Op. at 21, n.4. However, our canons of construction cannot bear the *lack* of weight the majority gives it, see *Lowe*, 472 U.S. 181 at n.53, and neither can our history. *See Kendall*, 107 U.S. at 125.

I do not subscribe to the facile construct that we can read "forever barred" to mean nothing more than "barred." Nor do I believe "forever" is a non-cipher. "We are not free to rewrite the statutory text." *McNeil*, 508 U.S. at 111. By providing that claims not presented within the time prescribed "shall be forever barred," Congress clearly expressed its intention that "every claim" (*Kendall*, 107 U.S. at 125) would be *invariably* barred, not *sometimes* barred so that equitable considerations might be held to extend the time in which to begin actions on such claims.

## D.  Ninth Circuit Precedent

The majority relies on three of this court's previous opinions to support its conclusion that § 2401(b)'s "shall be forever barred" language does not mean that the statute's time limit is jurisdictional.[21]  *See* Op. at 16–17.  It first relies on *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997), which held that § 2401(a) is not jurisdictional.  In fairness, the majority notes that this opinion's continued vitality was called into question by *Aloe Vera of America, Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009) ("To the extent that *Cedars-Sinai* is still valid after *John R. Sand*, the holding in *Cedars-Sinai* does not dictate the jurisdictional nature of section 7431(d)." (citation omitted)).  It dismisses that statement, however, because it "was made

---

[21] The majority also cites out of circuit authority—*Arteaga v. United States*, 711 F.3d 828, 832–33 (7th Cir. 2013); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 194–98 (3d Cir. 2009); *Perez v. United States*, 167 F.3d 913, 916–17 (5th Cir. 1999)—for the proposition that § 2401(b) is subject to tolling.  However, these cases are not persuasive.  *Arteaga* holds that because 28 U.S.C. § 2674 meant to hold the government liable in the same way as a private individual, and equitable tolling is available to private individuals, equitable tolling is available under the FTCA.  *Arteaga*, 711 F.3d at 833.  However, the *Arteaga* court ignores the plain language of § 2401(b) which states "to the agency to which it was presented."  A private individual may not be held liable for an agency claim.  Further, *Santos* ignores *Congress'* clear intent when it concludes that "the placement of the separate statutory savings provision does not suggest that Congress intended it to preclude equitable tolling." *Santos*, 559 F.3d at 196.  See Pub. L. No. 773, 62 Stat. 869, 991 (1948) ("No inference of a legislative construction is to be drawn by reason of the chapter in Title 28, Judiciary and Judicial Procedure, . . . in which any section is placed.").  Finally, *Perez* discussed the use of the phrase "forever barred" and found it was irrelevant, but failed to consider and attempt to distinguish prior cases interpreting the term, such as *Kendall v. U.S.* 167 F.3d at 915–918, and *Finn v. U.S.*, 123 U.S. at 332.

without the benefit of the Supreme Court's most recent decisions clarifying the distinction between jurisdictional and nonjurisdictional rules." Op. at 16 n.2. Of course, this claim gets us nowhere, because *Cedars-Sinai* was also decided without the benefit of those decisions. Thus, we cannot blindly rely on *Cedars-Sinai*; instead, we must examine whether it accords with the Supreme Court's most recent guidance.[22]

*Cedars-Sinai*'s analysis of the jurisdictional question is simple and brief. *See Cedars-Sinai*, 125 F.3d at 770. The court held: "Because the statute of limitations codified at 28 U.S.C. § 2401(a) makes no mention of jurisdiction but erects only a procedural bar, . . . we hold that § 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." *Id.* (citations omitted). Two problems with *Cedars-Sinai*'s analysis lead me to conclude that it is no longer good law.

First, *Cedars-Sinai* appears to erect an absolute rule that a statute of limitations is jurisdictional only when it specifically mentions the term "jurisdiction." *See Cedars-Sinai*, 125 F.3d at 770. Since *Cedars-Sinai* was decided, however, the Supreme Court has advised that Congress "need not incant magic words . . . to speak clearly [about

---

[22] The Court's "recent guidance" includes *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), *Holland v. Florida*, 130 S. Ct. 2549 (2010), *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011), and *Auburn Regional Medical Center*, 133 S. Ct. 817.

jurisdiction]." *Sebelius*, 133 S. Ct. at 824.[23] A requirement that Congress use the term "jurisdiction" runs afoul of this instruction. Moreover, the Court has clarified that a statute of limitations may be jurisdictional when it "speak[s] in jurisdictional terms or refer[s] *in any way* to the jurisdiction of the district courts." *Reed Elsevier*, 559 U.S. at 165 (emphasis added). As previously discussed, one way to refer to the courts' jurisdiction is to "suggest . . . that the provision was meant to carry jurisdictional consequences." *Henderson*, 131 S. Ct. at 1204. *Cedars-Sinai* failed to appreciate that, by providing that any claim not filed within the time specified "shall be barred," § 2401(a) limited the courts' power to act and, thus, referred to the courts' jurisdiction.

Second, *Cedars-Sinai* relied heavily on *Irwin*'s quotation of 28 U.S.C. § 2501, which the Court had deemed jurisdictional in *Soriano v. United States*, 352 U.S. 270 (1957).[24] After *Irwin*, there was initially good reason to

---

[23] In *Sebelius*, the governing statute allowed health care providers to file, within 180 days, an administrative appeal to the Provider Reimbursement Review Board from an initial determination of the reimbursement owed for inpatient services rendered to Medicare beneficiaries. *See id.* at 821 (citing 42 U.S.C. § 1395*oo*(a)(3)). The Secretary of the Department of Health and Human Services, by regulation, authorized the Board to extend the 180-day limitation, for good cause, up to three years. *See id.* The Court held that the 180-day limitation period was not jurisdictional and that the regulation permitting a three-year extension was a permissible construction of the statute. *See id.* at 821–22. It further held that equitable tolling "does not apply to administrative appeals of the kind here at issue." *Id.* at 822.

[24] In *Soriano*, the petitioner, a resident of the Philippines, filed suit in the Court of Claims to recover "just compensation for the requisitioning by Philippine guerilla forces of certain foodstuffs, supplies, equipment, and merchandise during the Japanese occupation of the Philippine Islands."

believe *Soriano* had been overruled. *See Irwin*, 498 U.S. at 98 (White, J., concurring in part and concurring in the judgment) ("Not only is the Court's holding inconsistent with our traditional approach to cases involving sovereign immunity, it directly overrules a prior decision by this Court, *Soriano v. United States*." (citation omitted)). Because it seemed *Irwin* had overruled *Soriano*, it also seemed the terms "shall be barred" were insufficient to make a statute jurisdictional. If that had been true, *Cedars-Sinai* may have been correct. But the Court has since clarified *Irwin* and reaffirmed *Soriano*'s vitality. *See John R. Sand & Gravel*, 552 U.S. at 137 ("[T]he Court [in *Irwin*], while mentioning a case that reflects the particular interpretive history of the court of claims statute, namely *Soriano*, says nothing at all about overturning that or any other case in that line. Courts do not normally overturn a long line of earlier cases without mentioning the matter." (citations omitted)). Given this clarification, and *Cedars-Sinai*'s tension with intervening Supreme Court decisions, I would hold that it was incorrectly decided and is of no precedential value on this issue. *See Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 550 F.3d 778, 782–83 (9th Cir. 2008) (explaining that circuit precedent is "effectively overruled" when its "reasoning or theory . . . is clearly irreconcilable with the reasoning or theory of

---

*Id.* at 270–71. The relevant statute of limitations provided that "[e]very claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed . . . within six years after such claim first accrues." *Id.* at 271 n.1 (quoting 28 U.S.C. § 2501). The petitioner filed suit more than six years after the alleged requisition claiming his delay was caused by World War II conditions in the Philippines. *See id.* at 271. The Court of Claims dismissed the suit without reaching the limitation question. *See id.* at 272. The Supreme Court affirmed and held that, by the time the petitioner filed suit, "his claim . . . was barred by statute." *Id.* at 277.

intervening higher authority." (internal quotation marks and citations omitted)).

The majority then cites *Partlow v. Jewish Orphans' Home of Southern California*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), and *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394, 396–407 (9th Cir. 1980), as instances where this court has held that the language "shall be forever barred" did not render a statute jurisdictional. *See* Op. at 17. Of course, these cases pre-date all of the Supreme Court's recent guidance as well. For that reason, we should once again take a critical look at their reasoning before relying on them.

The *Partlow* court held that equitable tolling could be applied to 29 U.S.C. § 255, the statute of limitations applicable to actions brought under the Fair Labor Standards Act. *See Partlow*, 645 F.2d at 760–61. Interestingly, the court did not conduct any in-depth analysis of the statute's text, context, or historical treatment. Indeed, the *Partlow* opinion does not once quote the statute's text or even mention the phrase "shall be forever barred." *See id.* at 757–61. Instead, the court relied on opinions from two of our sister circuits, each of which held that § 255 could be equitably tolled. *See id.* at 760 (citing *Ott v. Midland Ross*, 523 F.2d 1367, 1370 (6th Cir. 1975), and *Hodgson v. Humphries*, 454 F.2d 1279, 1283–84 (10th Cir. 1972)). It then noted that "courts have often stated that equitable tolling is read into *every* federal statute of limitations." *Id.* (citation omitted) (emphasis added). It then concluded that the statute should be tolled in the circumstances of that case. *See id.* at 760–61.

If it were unclear at the time *Partlow* was decided, it has since become abundantly clear that equitable tolling is not to be read into *every* federal statute of limitations. *See John R. Sand & Gravel*, 552 U.S. at 133–34 (explaining that some federal statutes of limitations—such as 28 U.S.C. § 2501, for instance—must be treated as jurisdictional, so that courts are forbidden to "consider whether certain equitable considerations warrant extending [the] limitations period[s]" they contain). Moreover, *Partlow* fails to conduct the kind of analysis required by the Court's more recent decisions. *See Reed Elsevier*, 559 U.S. at 166 (providing that "the jurisdictional analysis must focus on the 'legal character' of the requirement, which we discern[] by looking to the condition's text, context, and relevant historical treatment" (citations omitted)). For these reasons, I would hold that *Partlow* is today flat wrong, and of no precedential value on the question presently before the court.

In *Mt. Hood Stages*, this court held that equitable tolling could be applied to 15 U.S.C. § 15b. *See Mt. Hood Stages*, 616 F.2d at 396. It is once again telling that the court did not conduct any in-depth analysis of the statute's text or even mention the statute's phrase "shall be forever barred." *See id.* at 396–406. It is clear, then, that the decision was not based on a determination that the statute did not refer in any way to the courts' jurisdiction. In a word, *Mt. Hood Stages* skipped the first, Court-required step of textual analysis for a consideration of the statute's purpose in a regulatory scheme. *See Reed Elsevier*, 559 at 166.[25] Instead, the decision was based on the court's conclusion that "tolling the running of limitations serves the important federal interest in accommodating enforcement of the Sherman Act with

---

[25] This dissent analyzes § 2401(b)'s purposes in Part III, *infra*.

enforcement of the Interstate Commerce Act, and is not inconsistent with the purposes of the Clayton Act's limitation period." *Id.* at 396.

In particular, the *Mt. Hood Stages* court found that tolling would "contribute[] to a reasonable accommodation of the [Interstate Commerce Commission]'s responsibility for furthering the national transportation policy with the responsibility of the courts to effectuate the national antitrust policy." *Id.* at 397. Because the case "involved subject matter Congress ha[d] given the Commission jurisdiction to regulate," it "created a dispute *only* the Commission could resolve." *Id.* (emphasis added). The court noted that, "[i]f Mt. Hood had filed [its] antitrust suit . . . prior to the Commission determination [of a particular factual issue]," accommodation of the Clayton and Interstate Commerce Acts would have compelled "the court . . . to dismiss or stay the suit pending the necessary administrative determination." *Id.* at 399. Thus, "[c]ongressional purposes under the two statutory regimes would be served by tolling the statute of limitations during the Commission proceeding." *Id.* at 400. For that reason, the court held that the statute of limitations could be "tolled pending resort to an administrative agency for a preliminary determination of issues within its primary jurisdiction." *Id.* at 405; *see also Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 241 (9th Cir. 1987) ("[O]ur decision [in *Mt. Hood Stages*] rested on considerations of federal policy and primary jurisdiction which are not present here.").

Contrary to the majority's implication, *see* Op. at 16, *Mt. Hood Stages* does not stand for the proposition that "shall be forever barred" does not refer to the courts' jurisdiction. Indeed, a statute may *refer* to the courts' jurisdiction and yet

not be jurisdictional, much like a statute which does not speak in jurisdictional terms may still be jurisdictional. *See United States v. Brockamp*, 519 U.S. 347, 352 (1997) (holding that the timing requirements of 26 U.S.C. § 6511 are jurisdictional, even though the statute does not refer to the courts' jurisdiction, because of the provision's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions"). In short, even a statute that refers in some way to the courts' jurisdiction may not be jurisdictional when, for example, Congress has created dual statutory regimes, such as those involved in *Mt. Hood Stages*, that essentially require tolling for their accommodation. Of course, there are no such dual regimes at issue in this case, nor does this case involve the sort of federal policy and primary jurisdiction considerations that animated the court's opinion in *Mt. Hood Stages.* Thus, I would hold that *Mt. Hood Stages* offers no useful guidance on the question whether § 2401(b)'s language refers to the courts' jurisdiction.

In defense of *Partlow* and *Mount Hood Stages*, the majority states that these cases still "undermine the notion that Congress intended through the use of magic words . . . to establish jurisdictional bars in statutes allowing for civil suits against private parties." Op. at 22, n.5. Of course, this argument is merely a straw man; we all agree that Congress never uses "magic words" to establish jurisdiction. *See supra*, Bea Dissent at 75, n.17.

### III.  The Statute's Purpose

As earlier noted, in *John R. Sand & Gravel*, the Court identified the kinds of goals that make statutes of limitations jurisdictional: "[Jurisdictional] statutes of limitations . . . seek

not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." 552 U.S. at 133. Consideration of each of the goals outlined in *John R. Sand & Gravel* illustrates that § 2401(b)'s broad, system-related purposes require us to find that its timing provisions are indeed jurisdictional.

## A. Section 2401(b) Facilitates the Administration of Claims

The Court has held that § 2401(b)'s "obvious purpose" is to "encourage the prompt presentation of claims." *See United States v. Kubrick*, 444 U.S. 111, 117 (1979).[26] The requirement that a civil action be filed within six months of

---

[26] In *Kubrick*, the respondent, a veteran, was admitted to a VA hospital for treatment of an infected femur in April 1968. *See id.* at 113. Medical personnel irrigated the infected area with neomycin, an antibiotic, until the infection cleared. *See id.* Six weeks later, the respondent noticed some hearing loss. *See id.* at 114. In January 1969, doctors informed the respondent that it was "highly possible" that the neomycin treatment caused his hearing loss. *See id.* In 1972, the respondent filed suit under the FTCA, alleging he had been injured by negligent treatment at a VA hospital. *See id.* at 115. The VA denied the respondent's administrative claim, which he presented after he filed suit, in April 1973. *See id.* at 116 n.4. The Government then filed a motion to dismiss the suit as time-barred under 28 U.S.C. § 2401(b)'s two-year statute of limitations, on the theory that the respondent's claim accrued in January 1969, when doctors told the respondent that his hearing loss was likely caused by the neomycin treatment. *See id.* at 115. The district court rejected this defense and rendered judgment for the respondent. *See id.* The Third Circuit affirmed. *See id.* at 116. The Supreme Court reversed and held that claims accrue when the individual "knows both the existence and the cause of his injury." *See id.* at 113, 124–25.

a denial of an administrative claim guarantees that the civil action will commence while the denial of the claim is relatively fresh.  For actions filed within that time period, the Department of Justice, which will defend the cases, will be able to access the relatively fresh memories of the administrators who denied the claim.  It is also more likely that those administrators will be on the job six months after the denial of the claim than would be the case if the denial had taken place years before.

## B.  Section 2401(b) Limits a Waiver of Sovereign Immunity

The Court has held that § 2401(b) limits the waiver of sovereign immunity expressed in the FTCA.  *See Kubrick*, 444 U.S. at 117–18.  In particular, the Court has stated:

> "We should . . . have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations [expressed in § 2401(b)], *which is a condition of that waiver*, we should not take it upon ourselves to extend the waiver beyond that which Congress intended."

*Id.* (emphasis added).    This passage clearly identifies § 2401(b) as a provision "limiting the scope of a governmental waiver of sovereign immunity," which is exactly the kind of broader, system-related goal that makes a statute's time limit "more absolute."  *See John R. Sand & Gravel*, 552 U.S. at 133; Op. at 31.

The majority agrees that the FTCA "is predicated on a sovereign immunity waiver."  Op. at 31.  Further, the

majority admits that many of the cases upon which they rely—*Auburn Regional Medical Center*, *Gonzalez*, *Henderson*, *Holland*, and *Bowles*—do *not* involve issues of government immunity and therefore "may not raise precisely parallel sovereign immunity concerns" as are now before us. *See* Op. at 32 n.12.  The majority is unable to deny that (1) the FTCA limits waiver of sovereign immunity and therefore meets a goal that makes statutes of limitations jurisdictional under *John R. Sand & Gravel*, or (2) this difference distinguishes the FTCA and § 2401(b) from other cases on which the majority tries to rely.

### C.  Section 2401(b) Promotes Judicial Efficiency

First, like all statutes of limitations, § 2401(b) "protect[s] . . . the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *See Kubrick*, 444 U.S. at 117.  By promoting the prompt presentation of claims, § 2401(b) seeks to limit the amount of evidence lost to time and ensure that courts will adjudicate cases with complete records.  *See id.*

Second, when read together with § 2675, it is clear that § 2401(b) was intended to protect against the burdens of claims filed outside of its time prescriptions.  In *McNeil v. United States*, the Court held that § 2675's administrative exhaustion requirement was jurisdictional.  508 U.S. 106, 111–12 (1993).  There, the petitioner filed a complaint in federal district court alleging that the United States Public Health Service had injured him while conducting experimentation on prisoners in the custody of the Illinois Department of Corrections.  *See id.* at 108.  Four months

later, he submitted a claim for damages to the Department of Health and Human Services. *See id.* at 109. After the Department denied the claim, the petitioner sent the district court a letter and asked that it permit him to commence his legal action. *See id.* The court held that it lacked jurisdiction to entertain an action commenced before satisfaction of § 2675's administrative exhaustion requirement. *See id.* The Seventh Circuit affirmed and held that the petitioner had filed his action too early. *See id.*

The Supreme Court affirmed and held that § 2675's administrative exhaustion requirement was a jurisdictional prerequisite to filing suit under the FTCA. *See id.* at 112–13. As relevant here, it noted that "every premature filing of an action under the FTCA imposes some burden on the judicial system . . . ." *Id.* at 112. Similar burdens are imposed on the judicial system when actions are filed late, accompanied by claims that the court should toll the running of the statute of limitations for equitable reasons which may or may not justify the plaintiff's tardiness. As was the case for premature filings in *McNeil*, "the burden may be slight in the individual case." *Id.* But § 2401(b) "governs the processing of a vast multitude of claims." *Id.* For that reason, "adherence to the straightforward statutory command" is the best way to promote "[t]he interest in orderly administration of this body of litigation." *Id.*

Because § 2401(b) serves each of the three system-related purposes identified in *John R. Sand & Gravel* as making statutory time limits "more absolute," equitable tolling should not be applied here. Instead, we should hold that § 2401's time limits are jurisdictional in nature.

## IV.  The Statute's Context

Section 2401(b)'s context includes its placement in the larger statutory scheme, as well as any relevant exceptions Congress may have legislated.  It also includes the Supreme Court's "interpretation of similar provisions in many years past."  *Reed Elsevier*, 559 U.S. at 168.

### A.  The Supreme Court's Interpretation of Similar Provisions

The majority correctly notes that "there has not been . . . a venerable, consistent line of [Supreme Court] cases treating the FTCA limitations period as jurisdictional" and, indeed, that "there is no Supreme Court precedent on the question."[27] Op. at 30.  Still, the Supreme Court has examined similar provisions and offered guidance useful here.  As previously stated, *Kubrick* and *John R. Sand & Gravel*, taken together, strongly suggest that § 2401(b)'s time limits are jurisdictional.

The Court's analysis in *McNeil* only bolsters this conclusion.  There, the Court held that 28 U.S.C. § 2675(a) "bars claimants from bringing suit in federal court [under the

---

[27] The majority's focus is—jurisprudentially speaking—far too narrow. *See Reed Elsevier*, 559 U.S. at 168 ("[T]he relevant question here is not . . . whether [the statute] itself has long been labeled jurisdictional, but whether the type of limitation that [the statute] imposes is one that is properly ranked as jurisdictional absent an express designation."). Section 2401(b) expresses the same "type of limitation" the Court held jurisdictional in *Soriano* and *John R. Sand & Gravel*. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").

FTCA] until they have exhausted their administrative remedies." *McNeil*, 508 U.S. at 113. This requirement is jurisdictional. Courts cannot entertain a suit brought before exhaustion of administrative remedies, even if the claimant exhausts those remedies before "substantial progress [is] made in the litigation," because such a suit was filed too early. *Id.* at 110–11. Here, there is no dispute that, like the petitioner in *McNeil*, Wong filed her action before denial of her administrative claim and was similarly premature.

The majority emphasizes that § 2675(a) is located in chapter 171 and that Congress expressly conditioned the district courts' jurisdiction upon plaintiffs' compliance with the provisions of that chapter. *See* Op. at 23. In *McNeil*, however, the Court did not even mention this fact. Instead, it based its decision on two considerations: (1) the statutory text is unambiguous and expresses Congress's intent to require complete exhaustion of administrative remedies, and (2) "[e]very premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions." *McNeil*, 508 U.S. at 111–12. With respect to the premature filing, the Court noted that, "[a]lthough the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims," such that "[t]he interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command." *Id.*

The Court's language suggests once again that the FTCA's timing requirements fit into the jurisdictional category. *See John R. Sand & Gravel*, 552 U.S. at 133 (identifying "facilitating the administration of claims" as one of the broader, system-related goals that makes a statutory

time limit "more absolute"). In *McNeil*, the Court took a systemic view of its decision; it was concerned with the "orderly administration of this body of litigation" precisely because § 2675(a) "governs the processing of a vast multitude of claims." *McNeil*, 508 U.S. at 112. Because the same is true of § 2401(b), our analysis should feature the same concern. And, when one takes this more systemic view of § 2401(b), one will surely find that every premature—or late—filing imposes a burden on the judicial system and on the Department of Justice and agree with the Court that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 113.[28]

## B.  Placement

Seeking another interpretive tool to support its position, the majority emphasizes the fact that § 2401(b) is located in

---

[28] The majority notes that § 2675 is silent as to the deadline for filing a properly exhausted claim in the district court and concludes that "there is no contextual reason to think that the limitations period provisions are also jurisdictional." Op. at 28. But § 2675 does not require only that individuals exhaust their administrative remedies; instead, it specifies that individuals must exhaust their administrative remedies first (i.e. before they file complaints in federal court). *See* 28 U.S.C. § 2675(a). Thus, the statute requires a particular timing of administrative exhaustion, and the *McNeil* Court found this timing requirement significant. *See McNeil*, 508 U.S. at 111 (noting that the "petitioner's complaint was filed too early"); *id.* at 112 (addressing the burdens premature filings impose on the judicial system and the Department of Justice). Just as in *McNeil*, appellant Wong's complaint was filed "too early" and imposed a burden on the judicial system and Department of Justice. Because late filings impose similar burdens on the courts and the Department of Justice, there is good reason to believe that the limitations period expressed in § 2401(b) is also jurisdictional.

a provision separate from the FTCA's jurisdiction-granting provision. *See* Op. at 23. With respect, this fact is irrelevant. As the Court has explained, "some time limits are jurisdictional even though expressed in a separate statutory section from jurisdictional grants, while others are not, even when incorporated into the jurisdictional provisions." *Barnhart*, 537 U.S. at 159 n.6 (citations omitted). "Formalistic rules do not account for the difference, which is explained by contextual and historical indications of what Congress meant to accomplish." *Id.*

Even more problematic to the majority's analysis of the FTCA's reorganization in 1948, *see* Op. at 26, is the inconvenient enactment of a law rejecting placement in the Act as a valid interpretive tool. The majority acknowledges that, before 1948, Congress had expressly conditioned the grant of jurisdiction over tort claims against the United States upon plaintiffs' compliance with, among other things, the FTCA's original limitations provision. *See* Op. at 26. In 1948, however, Congress reorganized the FTCA and placed the limitations provision in chapter 161 and other provisions, such as § 2675, in chapter 171. *See* Op. at 26. It appears the majority would conclude from this fact that Congress intended to separate jurisdictional requirements (§ 2675) from non-jurisdictional ones (§ 2401). Congress, however, expressly rejected this possible reading of its reorganization efforts by an enactment of law. *See* Pub. L. No. 773, 62 Stat. 869, 991 (1948) ("No inference of a legislative construction is to be drawn by reason of the chapter in Title 28, Judiciary and Judicial Procedure, . . . in which any section is placed."). The majority simply ignores this Act of Congress, perhaps because it cuts directly against the majority's desired result: interpretive value based on the statute's placement.

Congress clearly stated that the placement of § 2401 in chapter 161 was not intended to change the way it should be interpreted. If Congress intended to condition the grant of jurisdiction over tort claims against the United States on compliance with the limitations period, the recodification in 1948 should not be read to alter that intent. That Congress later amended the jurisdiction-granting provision to provide that the district courts would have exclusive jurisdiction over FTCA actions "[s]ubject to the provisions of chapter 171 of this title," 28 U.S.C. § 1346(b)(1), says nothing about the jurisdictional status of a provision located in chapter 161.

## C.  The Significance of § 2401(a)'s Exceptions

"[A]s a general rule, . . . Congress's use of certain language in one part of [a] statute and different language in another can indicate that different meanings were intended." *Sebelius*, 133 S. Ct. at 825. As relevant here, § 2401(b) enumerates no exceptions, while § 2401(a) provides that "action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases." 28 U.S.C. § 2401(a). The relevant meaning to be inferred from *Sibelius*' interpretive canon quoted above is that Congress did not intend for any exceptions to be applied to § 2401(b). The majority is correct that this canon, standing alone, does not constitute a "clear statement" by Congress. *See* Op. at 28. The canon can, however, "tip the scales when a statute could be read in multiple ways." *Sebelius*, 133 S. Ct. at 826. I would not hold that consideration of this canon alone dictates a conclusion that § 2401(b)'s time limit is jurisdictional, but it reinforces that conclusion when considered with the statute's text and context.

## V.  Conclusion

Congress clearly expressed its intent that § 2401(b) would have "jurisdictional" consequences.  Jurisdictional treatment accords with the statute's text and the Supreme Court's analysis of similar provisions.  For these reasons, equitable tolling should not be applied to the time limits contained in § 2401(b).  I respectfully dissent.